ANDREWS *v.* BLOOM.

Opinion delivered June 23, 1930.

1062

E. M. Pipkin, Jr., and Wynne & Miller, for appellant.
W. G. Dinning, for appellee.

SMITH, J.  Appellee recovered judgment for per-
sonal injuries and for damages to his automobile, result-
ing from a collision with the automobile which he was
driving with one owned by appellant.  There was a con-
flict in the testimony as to whose negligence caused the
injury, but that question was submitted to the jury under
instructions conceded to be correct, and has been settled
by the verdict of the jury.

Another question in the case arises out of testimony
about which there is no substantial conflict.  It is to the
following effect.  Mr. Will Ragsdale owns and operates
a garage in the city of Helena, and does a general repair
business, and, as an incident to his business, sends out
and gets cars, when requested by the car owner, and has
them brought to his place of business.  This is a part of
the service which he has rendered for a number of years
for those patrons who desire that service.  On the morn-
ing of the collision the wife of appellant called Ragsdale
and advised him that she wanted her car greased and
the oil changed and a door of the car repaired.  The car
belonged to her husband, and she gave this order at his
request.  Upon receiving the order Ragsdale sent Oscar
Gullett and Fred Sims, two of his employees, for the car,
and while Gullett was driving it to Ragsdale's garage by
a direct route the collision occurred.  Gullett and Sims
were regularly employed by Ragsdale, and were paid by
him.

There was nothing unusual about this service, as it
was one rendered to all regular customers, such as ap-
pellant was, and no extra charge was made against ap-
pellant, or other similar customers, for going out and
getting cars.  Ragsdale would have charged the same
price for the service rendered if the car had been driven
to the garage and left there, and it was for appellant's

convenience that he sent for the car. This and other similar services are rendered without charge to customers like appellant who pay their bills regularly and as an incident to the business for which charges are made. It is Ragsdale's custom, in order to get the business, to send for cars, which his employees bring to his garage, and no extra charge is made for this service. He does not advertise that he renders this service without charge, and he does it as a favor when requested so to do by the owners, and he does it for their accommodation. The facts stated all appear from the testimony of Ragsdale himself.

Under this undisputed testimony the question for decision is, whose servant was Gullett at the time of the collision?

The facts stated do not, in our opinion, present the case of a borrowed servant. There are many decisions holding one liable for the negligence of a servant temporarily or specially employed, although no compensation is paid for the service during the temporary relation of master and servant.

The case of *Janik* v. *Ford Motor Co.*, 147 N. W. 510, 52 L. R. A. (N. S.) 294, which appellee cites and upon which he relies for an affirmance of the judgment here appealed from, is such a case. The Supreme Court of Michigan there said: "The essence of the best considered cases upon the temporary loan or hire of a servant for a special purpose is thus well stated in 26 Cyc. 1522: 'A person who avails himself of the use, temporarily, of the services of a servant regularly employed by another person may be liable as master for the acts of such servant during the temporary service. The test is whether, in the particular service which he is engaged or requested to perform, he continues liable to the direction and control of his original master, or becomes subject to that of the person to whom he is lent or hired, or who requests his services. It is not so much the actual exercise of control which is regarded, as the right to exercise such

control. To escape liability the original master must resign full control of the servant for the time being, it not being sufficient that the servant is partially under control of a third person. Subject to these rules the original master is not liable for injuries resulting from acts of the servant while under the control of a third person.' ''

That case was a suit against the Ford Motor Company, whose servant, at the request of the purchaser of a car, undertook to drive the car to the city limits, where it was to be turned over to Werner, the purchaser, who was a dealer in cars and who had bought the car to be delivered to a purchaser from him, but before reaching the city limits the car ran into a man as he was alighting from a street car. It was there held, in a suit for the damage thus occasioned, that the motor company was not liable, because its employee, who was driving the car at the time of the collision, was not acting as its servant, but was the servant of the purchaser of the car. Other facts in that case are to the effect that, having bought the car and paid for it, Werner asked the salesman of the motor company, from whom he had purchased the automobile, if they would let him have a driver to take them to the city limits, as Werner was not familiar with the city streets. Further stating the facts, the court said: ''In the instant case there was no agreement or suggestion, as a part of the negotiations and purchase, that the motor company should assume or undertake any instructions to the purchaser relative to operating the car, or to see that when it left the salesroom it was properly run for any length of time, or to any place. He was a dealer in cars himself, experienced in their use, and knew what was necessary. The deal was closed, he had his receipt, and the car had been delivered to him at the time he asked for the accommodation. Groholski was sent along to drive as a 'mere favor to the purchaser.' At the time of the accident Werner, an experienced driver, not only owned the car, but was in actual occupa-

tion and possession of it, riding with a prospective purchaser out from the city towards their home. He was in no sense helpless, looking to, and dependent upon, the driver, as would be the case of an inexperienced purchaser. Like many other experienced drivers from the country or small towns, he felt less confidence in driving through the congested thoroughfares of a large city, and for that reason asked the loan of a driver to the suburbs. The fact that he found no occasion to give instructions to the driver, except to tell him along what street to drive, and relied upon his skill and experience, in no way affected Werner's absolute right to control him in everything he did in connection with the car. *Samuelian* v. *American Tool & Mach. Co.*, 168 Mass. 12, 46 N. E. 98, 1 Am. Neg. Rep. 447. Under the undisputed testimony, the motor company had no control over nor interest in the car after it left its salesrooms, nor in the manner in which it was run, nor in where it went. It could not dictate how the car should be run; the most it could do would be to recall from this special employment the servant it had loaned. During Groholski's absence from the salesrooms in this service he was doing the work of Werner, to whom he was gratuitously loaned, on the initiative and request of Werner, who had full right to dictate as to his own property and direct in what manner the car should be operated. He unquestionably could have taken charge and driven it himself, if he saw fit at any time, and, if so disposed, could have discharged the driver and proceeded without him; he was therefore for the time being the special master.''

We think that case was correctly decided under the principles there announced and herein applied. We shall not attempt to review other cases on the subject, as the number of them is almost without limit. The legal principles applied in all these cases are the same, but the cases apply the principles to an almost infinite variety of facts.

At § 748 of Huddy on Automobiles (8th Ed.) page 856, it is said: "The general rule in the law of master

and servant is that the owner of a motor vehicle is liable for the acts of his chauffeur when the latter is acting within the scope of the master's business. The reverse is also true, that the owner is not liable for the conduct of the servant when the latter is not acting within the scope of his employment." Among the large number of cases cited in support of the text quoted are three from this court: *Healey* v. *Cockrill*, 133 Ark. 327, 202 S. W. 229; *Hughey* v. *Lennox*, 142 Ark. 593, 219 S. W. 323; *Terry Dairy Co.* v. *Parker*, 144 Ark. 401, 223 S. W. 6.

In the case of *Terry Dairy Co.* v. *Parker, supra,* we quoted from the case of *Singer Mfg. Co.* v. *Rahn,* 132 U. S. 523, as follows: " '* * * The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, not only what shall be done, but how it shall be done.' " After thus quoting from the Supreme Court of the United States, we said: "This is also the doctrine announced by our own decisions."

At § 255 of Huddy on Automobiles, page 252, it is said: "Where a garage keeper has control of the motor vehicle of another, so that the relation of bailor and bailee exists between the parties; the garageman, not the owner, is the person responsible for the chauffeur's negligence which results in an injury to a third person."

In volume 2, Blashfield's Encyclopedia of Automobile Law, at page 1362, this statement of the law appears: "Under the rules stated in the foregoing sections, a mechanic holding possession of an automobile for the purpose of repairing it in his own way by the job, and free from direction or control of the owner as to detail or the manner of repairing, is an independent contractor, and the owner is not liable for injuries caused by the mechanic's negligent operation of the car while in the latter's possession for such purpose; and this is true whether or not, at the time of the accident, the repairman is testing it or returning it to the garage designated

by the owner, since the contract of bailment is not complete until delivery of the machine to the owner."

The annotator's note to the case of *Marron* v. *Bohannon*, 46 A. L. R. 838, 104 Conn. 467, 133 Atl. 667, is devoted to the specific question of the "Responsibility of owner of car for negligence of one in general employment of repair man or keeper of garage while getting or delivering car," and the effect of the numerous cases there cited is summarized in the statement by the annotator to be that, "But as a general rule the owner of a car is not liable for the negligent driving of his car by a person in the general employment of a garage man while getting or delivering his car."

The distinction between the instant case and the Michigan case of *Janik* v. *Ford Motor Co., supra,* from which we have quoted and upon which, as we have said, appellee relies, is well defined and of controlling effect, and that distinction is just this: In the Michigan case the driver of the car, whose negligence caused the injury, was, at the time, the servant of the owner of the car; while in the instant case the driver of the car, at the time of the injury, was not the servant of the owner of the car.

It is true, as we have said, that Ragsdale made no separate or higher charge for sending for cars upon which he expected to perform service. But this practice was a means whereby Ragsdale's business was enlarged, and in charging for work done upon a car he received compensation for sending for it and delivering it. He had the choice of selecting the servant who was sent for the car, and had sole control over him while that service was being performed. Gullett had no communication with appellant, and received no instructions from him. Gullett received his instructions from Ragsdale, and continued liable to the direction and control of Ragsdale, his original master, and he was therefore the servant of Ragsdale, and not that of appellant, at the time of the collision.

It follows therefore that the judgment of the court below holding appellant liable for Gullett's negligence must be reversed, and, as the case has been fully developed, it will be dismissed. It is so ordered.