HOME INSURANCE COMPANY, Ed LOLLIS,
J. L. WARD *v.* Carroll P. WILLIAMS, Individually
and as Father and Next Friend of Bruce
WILLIAMS, A Minor, and Gene DARTER

73-14                                   494 S.W. 2d 110

Opinion delivered May 7, 1973

*Griffin Smith,* for appellants.

*Gordon, Gordon & Eddy,* for appellees.

*Cockrill, Laser, McGehee, Sharp & Boswell,* for ap-
pellee Darter.

Lyle Brown, Justice. This is a second appeal, the first
appeal having resulted in a remand. *Home Insurance
Company* v. *Williams,* 252 Ark. 1012, 482 S.W. 2d 626
(1972).

Appellee Carroll P. Williams, for himself and as
next friend for his son, originally sued Home Insurance
alleging that he was entitled to benefits of the uninsured
motorists' coverage in a policy issued to him by Home
Insurance. The accident occurred while appellant J. L.
Ward, who with appellant Ed Lollis, operated a service
station at Morrilton, was operating a car owned by appel-

lee Gene Darter, on which Ward had mounted four new tires. Ward was in the process of delivering the car to Mrs. Darter and struck the Williams boy who was a pedestrian. The car had been delivered to Ward-Lollis by Mrs. Darter with instructions to deliver it to her place of employment. The case proceeded against Home Insurance, Ward-Lollis, and Gene Darter. The latter named parties were brought into the case by Home Insurance as third party defendants. At the close of all the testimony the court directed a verdict in favor of Gene Darter, holding that the driver, Ward, was acting as bailee rather than as agent for the owner, Darter. Other factual details will be recited as the points for reversal are developed.

The principal point for reversal is that the court erred in instructing a verdict for Gene Darter, insisting that whether the driver, Ward, was bailee or agent of Darter, was a question of fact which addressed itself to the jury. The facts are fairly undisputed. Mrs. Darter took the family car to Ward-Lollis' garage and station and asked that they mount four new tires which had been purchased at a tire store. Ward-Lollis agreed to mount the tires, for which of course they made a charge. Ward-Lollis further agreed to deliver the car to Mrs. Darter's place of employment. James Ward testified that it was customary to deliver customer cars (without charge) only if a request was made.

On the basis of our precedents we do not think the facts made a case on the borrowed servant theory. We have two cases which are fairly well in point. *Andrews* v. *Bloom,* 181 Ark. 1061, 29 S.W. 2d 284 (1930); *Reynolds* v. *Bounds,* 238 Ark. 610, 383 S.W. 2d 496 (1964).

In *Andrews* the wife of appellant called the garage and advised that she wanted her car serviced. At her request, Ragsdale, the garage owner, sent two of his employees for the car and while driving it to the garage by direct route a collision occurred. It was pointed out that Ragsdale sent his employees for customer cars when requested; that he did it as an accommodation to the owner; and that he made no extra charge therefor. In the described situation this court held that the driver of the

car was acting as bailee of Andrews as opposed to the contention that the driver was the servant of Andrews.

The undisputed facts relating to the point before us are brief in *Reynolds*. Gordon Smith was an employee of appellants Reynolds & Williams Construction Company on a job near El Dorado. Smith drove a company truck into a service station in El Dorado to arrange for servicing. At Smith's request one of the service station attendants drove with Smith several miles to near the job site. There the truck was turned over to the service station employee. On the return trip to the filling station the truck collided with a car belonging to appellees Bounds and wife. Judgment was obtained against Reynolds & Williams. The construction company appealed on the ground that the trial court erred in not directing a verdict in their favor. We sustained Reynolds & Williams' position. In that case we quoted with approval the general rule stated in 35 ALR 2d 804:

> In the great majority of cases involving negligent operation of a car by service personnel in connection with the work for which it has been placed in their custody, the courts have held that the owner is not liable.

> This result is generally reached on the theory that the service establishment becomes the bailee of the car as an independent contractor, since the owner is concerned only with the results of the work and not with the detailed manner in which it is carried out.

We hold that the two cited cases are controlling and that within the orbit of the particular facts in the case at bar, Darter, the car owner, was entitled to an instructed verdict.

Appellants make this concession in their brief: "True, had it been delivered back to the residence of the owner, the bailment would well have continued and no agency arises. . ." Appellants base their argument on the fact that the car was delivered to Mrs. Darter's place of employment. We simply are unable to agree that the delivery of

the car to the wife's place of employment is so significant as to alter the applicable rule of law.

Appellants contend that the verdict for $10,000 which was for pain and suffering alone, is excessive. We would agree that it is liberal but we are unable to say it is excessive. The young man received a transverse fracture two inches above the knee; the doctor said such an injury is severely painful; a metal pin was driven through the bone and traction was applied; narcotics were administered for a number of days; the patient was on his back continuously for the first four weeks; after the healing period he was placed in a cast from his chest to his toes for an additional six weeks; the doctor said the healing period involved soreness and tenderness of the tissues and joints; the doctor and hospital bills were very substantial; and the patient was forced to miss three months of school. The latter two items do not reveal pain and suffering of themselves, but they do bear out the contention that the trauma was major in nature.

The final contention is that the attorney's fee of $4000 is excessive. We think that a fee of $2000 is adequate, and we so modify. In all other respects, including of course the statutory penalty, the judgment is affirmed.

Affirmed as modified.

BYRD, J., dissenting in part, would fix the attorney's fee at $1000.