WOOTEN v. WOOTEN.

Opinion delivered April 23, 1928.

1. INSURANCE—FINDING AS TO MENTAL CAPACITY.—The finding of the chancellor that the insured was possessed of sufficient mental capacity to change the beneficiary of an insurance policy, *held* not clearly against the preponderance of the evidence.

2. WITNESSES—INCOMPETENCY OF PHYSICIAN—WAIVER.—Testimony of physicians attending insured *held* admissible under Crawford & Moses' Dig., § 4149, in an action on the policy where the insured in his lifetime for himself and beneficiaries waived the benefit of their disqualification.

Appeal from Jefferson Chancery Court; *Harvey R. Lucas,* Chancellor; affirmed.

*Brewer & Cracraft,* for appellant.

*R. W. Wilson* and *John W. Kimbro,* for appellee.

SMITH, J. The Sovereign Camp Woodmen of the World issued a beneficiary certificate to Edd Wooten, which, at the time of his death, on October 25, 1926, was worth $1,173. Ida Belle Wooten was the wife of the insured at the time of the issuance of the certificate, but, in 1920, she obtained a divorce from the insured, and was thereafter deprived of her status as a beneficiary under the constitution of the insurance order, which provided that, in the event of a divorce, the insured spouse should designate another beneficiary, failing which the insurance should be payable to the next of kin of the insured.

Eloise Wooten, an adopted child of the insured, was the next of kin at the time of the insured's death, but, two days before the occurrence of that event, a change of beneficiary was indorsed on the certificate, whereby Thomas F. Wooten, a nephew of the insured, was designated as the beneficiary.

In the suit brought to recover the value of the certificate the insurer filed an answer admitting its liability to the true beneficiary, and it was permitted to pay that sum into court, whereupon it was discharged, and the litigation proceeded between the adopted child and the nephew.

The court below found the fact to be that, at the time of the alleged change of beneficiary, the insured did not have the mental capacity to perform that act, and judgment was rendered in favor of the daughter for the fund in court, and this appeal is from that decree.

The testimony showed beyond question that the insured was devoted to his adopted child, although she lived with his divorced wife, and that he kept in constant touch with his daughter, about whose welfare he was very solicitous, and that he was especially anxious that his daughter should have an education and should be taught music.

The insured had a stroke of apoplexy about a year' before his death, which left him an invalid, and thereafter until his death his nephew, Thomas, was kind to him in many ways. The insured had a second stroke on October 12, and was taken to a hospital at Crossett two days later.

Dr. Kimbro testified that he was the insured's physician after the insured was first stricken, and that he saw insured two or three times every week during the year prior to the insured's death, and that he observed a marked weakening, both mentally and physically. After the second stroke the insured was paralyzed on one side; he could not articulate, but made motions with his hands to indicate his wants; he could not speak, and would cry when he attempted to do so, and was in no condition to be interviewed. The prognosis was very unfavorable, as there was a lesion of the brain tissue, and it was the opinion of the witness that the insured would live only a few days after being taken to the hospital, and it was also the opinion of the witness that the insured was not normal mentally, and was incompetent to transact any business when carried to the hospital on October 13.

Dr. Spivey, the physician in charge of the hospital, testified that he saw the insured two or three times each day after the insured was brought to the hospital, and that at no time was the insured competent to transact any business; that he suffered a third stroke on October

21, after which he was conscious only of pain and thirst and hunger, and died on October 25.

The change of beneficiary was made October 23, and the persons then present testified that the insured was conscious, and fully realized what he was doing when he signed the change of beneficiary by mark. The insured was unable to write on account of his condition, but could and did touch the pen, and in this way made his mark, which was witnessed by two of the persons present. Two physicians, who did not see the insured after his stroke, testified, in response to hypothetical questions, that the insured was not necessarily incompetent mentally, even after the last stroke, to transact business. There was certain other testimony of non-expert witnesses on each side of the question; but, without setting out the testimony any further, we announce our conclusion to be that the finding of the chancellor does not appear to be clearly against the preponderance of the evidence.

Only one question of law is raised, and that is the competency of Drs. Kimbro and Spivey to testify as witnesses, it being insisted that their testimony was inadmissible under § 4149, C. & M. Digest, which provides that "no person authorized to practice physic or surgery * * * shall be compelled to disclose any information which he may have acquired from his patient while attending him in a professional character, and which information was necessary to enable him to prescribe as a physician or (do) any act for him as a surgeon * * *."

Drs. Kimbro and Spivey both testified that the opinions expressed by them were based upon information obtained while waiting on the insured in a professional capacity.

The objection to the admissibility of this testimony may be disposed of by saying that in the "application for membership and participation in the beneficiary fund" made by the insured, appears this statement: "I further waive for myself and beneficiaries the privileges and benefits of any and all laws which are now in force

or may hereafter be enacted in regard to disqualifying any physician from testifying concerning any information obtained by him in a professional capacity.''

In the case of *National Annuity Assn.* v. *McCall,* 103 Ark. 201, 146 S. W. 125, 48 L. R. A. (N. S.) 418, Dr. Pringle testified that he had attended the insured, whose death was there in question, before and at the time of his death, as his family physician, and in this way acquired information as to the cause of the insured's death, which he thought he should not disclose. The court refused to require the witness to answer, upon the ground that this information was privileged under the statute referred to. In holding that there was error in refusing to permit the witness to state from what cause the insured had died, inasmuch as the application had waived the benefit of the statute, it was here said:

''This statute accords the privilege to a patient of objecting to disclosures of matters communicated to or information obtained by a physician as such, and this privilege does not cease with the death of the patient. But this privilege may be waived by the patient himself and after his death by his representative; and so, too, where one occupies a relation to the deceased by reason of a contract, such as is involved in this case, wherein he is made the beneficiary of a life insurance policy, he has, by virtue of this statute, a right to object to testimony relative to the communications therein named as privileged, and he has also the right to waive this privilege conferred by it. 4 Wigmore on Evidence, § 2387; *Penn Mut. Life Ins. Co.* v. *Wiler,* 100 Ind. 92, 50 Am. Rep. 769. A person may also, in his written application for insurance, waive the right to object to the testimony of a physician as to information acquired while attending as such.''

The testimony of Drs. Kimbro and Spivey was therefore competent, and, as the finding of the court below does not appear to be contrary to the preponderance of the testimony, the decree must be affirmed, and it is so ordered.