AMERICAN REPUBLIC LIFE INS. CO. *v.* EDENFIELD.

5-1326                                                    306 S. W. 2d 321

Opinion delivered October 21, 1957.

[Rehearing denied November 25, 1957.]

94

*Joe Bailey Humphreys,* Dallas, Texas, and *Talley & Owen, by Robert L. Rogers, II,* for appellant.

*Catlett & Henderson,* for appellee.

J. SEABORN HOLT, Associate Justice. Appellant, American Republic Life Insurance Company, brought this suit to cancel two life insurance policies.

On March 1, 1954, appellant issued to D. S. Edenfield its policy in the amount of $5,000.00, plus a family maintenance rider of $4,225.00 payable to the appellee in the event of his death, for which he paid the premium of $344.60. At the same time, appellant on its own volition, prepared and offered Edenfield another policy in the amount of $5,000.00 payable to appellee, which he accepted and paid the premium of $280.15. This second policy was delivered on April 5, 1954. It appears that Edenfield executed an application for the first policy but none for the second. There was a medical examination of the insured for the first policy but none for the second. Edenfield died November 12, 1955 (within the two year contestable period provided in the policy) and appellee

in an effort to collect on the two policies, in apt time, executed and returned to appellant all forms tendered to her. Appellant, as indicated, refused payment and filed this suit to cancel the policies. After admitting issuing the policies to Edenfield, appellant alleged ''That at the time of the issuance of said policies and for several years prior thereto, the said Dempsey Stoney Edenfield insured in said policies was suffering from coronary arteriosclerosis.

''That for several years prior to the issuance of said policies the said insured had undergone medical treatment and medical examinations on several occasions for the arteriosclerosis. That the said insured knew at the time of his application for and the issuance of said policies that he was suffering from arteriosclerosis.

''That the said insured fraudulently, willfully, and deliberately represented to the plaintiff that he did not have arteriosclerosis and that he had not undergone any treatment for said disease or condition.

''That the said insured died November 12, 1955, because of the said coronary arteriosclerosis.

''That if the plaintiff had been advised of the existence of the disease it would not have issued the above-named policies to the insured.''

Appellee answered denying any fraud on the part of the insured in securing the policies, and prayed for a decree in the amount of $14,225.00 plus 12 per cent penalty, plus costs and a reasonable attorney's fee.

Trial resulted in a decree for the appellee, as prayed, and this appeal followed.

For reversal, appellant first contends that the insured ''Had numerous diseases and illnesses during the period of several years immediately preceding the application for the policy involved herein and his failure to disclose this to the appellant company in the application and medical examiner's report so that they might investigate and determine what was actually wrong with him and know of his numerous illnesses was more than suffi-

cient reason for the lower court to cancel the policies, and that the court erred in not so holding.'' We do not agree. Appellant stoutly contends that the insured died of heart disease, that he knew he had this disease when the policies were issued to him and as proof it offered in evidence several depositions from various physicians who had examined him prior to the issuance of the policies. The trial court refused to admit in evidence these depositions on appellee's objection that they were all privileged as being communications between the physician and patient, under § 28-607, Ark. Stats., 1947. We think the court properly excluded these depositions unless the privilege to object was waived on the part of the insured. We said, in *Maryland Casualty Company* v. *Maloney,* 119 Ark. 434, 178 S. W. 387: ''We have said in some cases that the statute was enacted 'as a matter of public policy to prevent physicians from disclosing to the world the infirmities of their patients.' *Mutual Life Ins. Co.* v. *Owen,* 111 Ark. 554, 164 S. W. 720. That is undoubtedly a correct statement, but it is not a complete one, for the statute itself relates entirely to introduction of evidence and not to disclosures in any other way; and the mere fact that the world may have the information does not abrogate the right of a party in whose favor the privilege exists to claim protection from disclosure in the trial of rights before a court or jury. *Arizona & New Mexico Ry. Co.* v. *Clark,* 235 U. S. 669.

As indicated, these policies were issued following a medical examination by appellant's own physician for the first policy. This physician's signed report contains the following:

''18. HEART

    (a) Any murmurs? . . . No.

    (b) Any enlargement? . . . No.

    (c) If any abnormality, what response to exercise, e.g. 50 hops . . .

25. Do you advise the risk without qualification?

    Yes.

If not, why not?  . . ."

Mr. Kaltenbach, appellant's underwriter, testified, "If it is a medical policy we rely on what our physician says about a man."

So we have the positive statement of the examining physician that the insured, at the time of the examination, did not have any heart disease and advised the risk without qualification. But appellant argues that all statements on the application and those statements made to the medical examiner as shown on the examiner's report were warranties and not representations. We do not think so. It appears that neither the policies nor the medical examiner's report provided that answers given by the applicant, the insured, should be warranties.

The policies of insurance provided, "1. Policy Contract. This policy and the application herefor constitute the entire contract between the parties hereto. All statements made in applying for this policy shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall avoid the policy unless it is contained in a written application, and a copy of the application is attached hereto when the policy is issued." "It is well settled that the burden is on appellant to establish fraud by proving affirmatively the falsity, materiality and bad faith in the representations made by the insured in the application regarding his health." *Aetna Life Insurance Co.* v. *Mahaffy,* 215 Ark. 892, 224 S. W. 2d 21.

The application signed by the insured contains this recital, "I declare that the above statements and answers are full, true and complete to the best of my knowledge and belief and shall form a part of the policy." Statements made to the medical examiner contain a sentence, "I have read and agree that the above statements are true and shall constitute a part of this application," and the adult life application in this case and the report of the medical examiner contains the following authorization: "To whom it may concern: I hereby request and authorize you to disclose, whenever requested to do so by

American Republic Life Insurance Company, or its representative, any and all information and records concerning my condition when under observation by you." The insured answered negatively the following question in the report of the examining physician: "What other physicians have you consulted in the past five years? Why?", and all other questions relating to any heart ailments and physical or mental impairment. From all the competent evidence we think the preponderance is to the effect that the deceased was justified in believing that he had no heart disease when he was examined by the appellant's doctor and when he had consulted other physicians to determine whether he had this trouble and that his declarations were representations and not warranties. In *U. S. Fidelity & Guaranty Co.* v. *Maxwell,* 152 Ark. 64, 237 S. W. 708, we said, "It has been decided by this court that a mere reference in a policy to the application does not constitute a warranty, even though the application itself contains a statement that the truth of the statements shall constitute a warranty. The reason for this rule is that the policy itself is the last word between the contracting parties and should be the evidence of the extent of the contract" (citing cases).

It appears that the insured's brother had died of heart trouble and the insured appeared to be obsessed with the fear that he might develop this disease. The competent evidence does not show that these examinations by other physicians disclosed more than trivial ailments.

In the case of *Southern National Ins. Co.* v. *Pillow,* 206 Ark. 769, 177 S. W. 2d 763, this Court said:

"This Court has often held that questions propounded to applicants for insurance with respect to consultation with and treatment by physicians do not contemplate answers with respect to trivial ailments, and this is true whether the answers constitute warranties or representations."

While our rule as announced in *National Annuity Association* v. *McCall,* 103 Ark. 201, 146 S. W. 125 and

cited by appellant is well established to the effect that an insured may, in his written application, waive the right to object to the evidence of a physician relating to information obtained by the physician while attending the insured as a patient, however, we think the cases relied on by appellant in support of this rule are distinguishable from the present case, for in each of those cases the patient appears to have expressly waived his objection to his physician divulging all knowledge gained by his examination of the patient. In the case of *Wooten* v. *Wooten,* 176 Ark. 1174, 5 S. W. 2d 340, on which appellant relies, the waiver was as follows: "I further waive for myself and beneficiaries the privileges and benefits of any and all laws which are now in force or may hereafter be enacted in regard to disqualifying any physician from testifying concerning any information obtained by him in a professional capacity." And in their other case, *Adreveno* v. *Mutual Life Association* (CC. E. D. Mo.), 34 F. 870, the waiver, which was a part of the application and made competent the doctor's testimony, was as follows:

"And the applicant hereby expressly waives any and all provisions of law now existing, or that may hereafter exist, preventing any physician from disclosing any information acquired in attending the applicant in a professional capacity or otherwise, or rendering him incompetent to testify as a witness in any way whatever." We think it obvious that there is a material difference between the clear authorizations above and relied upon by appellant and the alleged waiver of the insured, Edenfield, which authorized his doctor to disclose information and records concerning his condition while under his doctor's supervision. It would have been an easy matter for the insurance company to have used language so clear as to be beyond any doubt as to its meaning as was used in the two cases above, which informed the insured that he was expressly waiving all laws preventing his doctor from testifying and disclosing any information acquired while attending the insured professionally, or that would render him incompetent to testify in any capacity. Any doubts as to the meaning of the language used in a contract must be resolved against the party who prepared it.

Appellant's contention that the appellee, the insured's widow, waived the privilege when she executed proof of death is, we think, without merit. The proof of death authorized "any physician, hospital, or other person to give to the Company any information concerning the health or insurability of the Deceased, and hereby specifically waive all grounds of defense or objections based on rights of confidential relationship or privileged communication between Physician or Hospital and Patient." We hold that the waiver here was limited for the purpose of adjustment and settlement of the claims on the policies and did not extend to the use of such information in a suit on the policies. This authorization was furnished by appellee at appellant's request as a part of the proof of loss in an effort to obtain a settlement of her claim. We said in a similar situation in the recent case of *Metropolitan Life Ins. Co.* v. *Kendall,* 225 Ark. 731, 284 S. W. 2d 863, "In similar circumstances the governing rule has been clearly announced by this Court in *Fidelity & Casualty Co.* v. *Meyer,* 106 Ark. 91, 152 S. W. 995, where we said: 'According to the weight of authority, where a policy of insurance does not itself contain a provision for waiver of the privilege, the introduction in evidence of certificate of death given by a physician of the insured does not waive the provisions of the statute against physicians testifying concerning information received in the course of professional employment . . . But whatever may be the state of the law on that question as established by the authorities, even if the rule be otherwise than as above stated, it cannot be extended to cover a case like this, where the affidavit or certificate of the physician is not furnished pursuant to the requirements of the policy, but merely as a voluntary act in an effort to secure a settlement.' "

Finding no error, the decree is affirmed.