LIFE & CASUALTY INS. CO. OF TENN., A CORP., v.
LEOPAL C. SMITH

5-4730                                          436 S.W. 2d 97

Opinion Delivered January 13, 1969
[Rehearing denied February 10, 1969.]

*Douglas Bradley* for appellant.

*Barrett, Wheatley, Smith & Deacan* for appellee.

Lyle Brown, Justice.    Life & Casualty Insurance Company of Tennessee prosecutes this appeal from a judgment favoring Leopal C. Smith, widow of the insured, W. D. Smith.    The application attached to the nonmedical policy showed the insured to have been in good health.    The essential contentions determinative of the appeal are to the effect that Smith was then suffering from physical ailments material to the issuance of the policy; and that the failure to reveal those ailments constituted a fraud which vitiated the policy.

In January 1965, W. D. Smith signed an application for insurance in which a ''no'' answer was inserted to the following questions:

"17.  Is any person proposed for coverage NOT in good health?

19.  Is there any history of diabetes, cancer, heart trouble, high blood pressure, mental illness or insanity in the family?

21. Has any person proposed for coverage been treated for or received a physician's advice concerning

(a) High blood pressure, rheumatic fever, heart trouble, dizziness, syphilis? . . .

(i) Blood, albumin, or sugar in urine?

22. Has any person proposed for coverage

(a) Had any illness, disease, or injury in the past ten years not included in answers above?

(b) Been examined or treated for any reason not included in answers above?"

Dr. Floyd Smith was W. D. Smith's physician. Dr. Smith testified that he began treating W. D. Smith in 1954 and attended him until death; that W. D. Smith visited his office in March, April, May, and August 1962, in relation to hypertension. In addition, Dr. Eldon F. Caffery testified that W. D. Smith was referred to his office by Dr. Floyd Smith. He testified that he saw W. D. Smith on November 18, 1960, had him go to the hospital November 21 for kidney x-rays, saw him on the 22nd and advised him of the results of the x-rays. The diagnosis was high blood pressure and albumin in the urine. A similar diagnosis was made in Dr. Caffery's office in 1965.

The proof showed that W. D. Smith died in 1965 of uremia. The death certificate also showed than an antecedent cause was chronic glomerulonephritis.

Ark. Stat. Ann. § 66-3208 (Repl. 1966) provides:

Representations in applications.—(1) All statements in any application for a life or disability insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall

not prevent a recovery under the policy or contract unless either:

(a) Fraudulent; or

(b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(c) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract in as large an amount or at the same premium rate, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise ... [Acts 1959, No. 148 § 275, p.418].

The trial court instructed the jury that appellee would not be barred from recovery unless the insurer established that the deceased knowingly and fraudulently made false statements which induced the issuance of the policy. That statement was not complete in view of Act 148 of 1959. When the insurer in good faith would not have issued the policy except for omissions material to the risk, or incorrect statements likewise material, the policy is subject to voidance during the contestable period. *Dopson* v. *Metropolitan Life Ins. Co.*, 244 Ark. 659, 426 S.W. 2d 410 (1968) The word "material" is absent from subsection (c); however, that section requires good faith on the part of the insurer. If the matter omitted or incorrectly stated could logically have no bearing on the assumption of the risk then it could not be successfully argued that the insurer's "good faith" defense should prevail.

Our holding in *Dopson* is in accord with one of the leading authorities, *Couch on Insurance 2d*, § 35:24, where it is stated:

"If it is shown that the misrepresented matter was material to or increased the risk it is immaterial and irrelevant that the insured had acted in good faith without any bad motive or intent to deceive. This means that if a representation is made which is untrue and material it taints the contract, whether fraudulent or not, and, if untrue and fraudulent, it taints the contract, whether material or not."

To the same effect see *Langlois* v. *The Wisconsin National Life Ins. Co.,* 119 N.W. 2d 400 (Wisc. 1963). It was there held that an intent to deceive need not be established. "It was enough to prove the making of the misrepresentation and its effect upon the risk undertaken."

With reference to the alleged harshness of the rule, it should be remembered that the insurer has only two years in which to contest the truthfulness of statements in the application; after that period they are incontestable. See Ark. Stat. Ann. § 66-3304 (Repl. 1966).

Furthermore, Smith was more capable than the average man of contracting, being a part-time pastor and a United States mail clerk. And, just above his signature and in clear print, it is stated that "applicant represents the foregoing statements and answers . . . to be true and complete."

The essential facts appear to have been fully developed in the trial below. Medical testimony from two doctors who examined and treated the deceased reflected serious physical ailments which proved to be fatal; that their findings were made known to W. D. Smith; and that the findings were of such serious nature as to call for hospitalization (Smith declined to follow that advice). The insurance agent who took the application, and whose credibility was not seriously questioned, testified that he filled in the answers to the medical questions in the presence of the applicant and

on the basis of information supplied then and there by W. D. Smith. No testimony was offered to the contrary. Life & Casualty's officer in charge of the department which evaluates insurance applications testified that knowledge of the true medical history would have precluded them from writing the policy.

Reversed and dismissed.

HOLT, J., not participating.