## UNION LIFE INSURANCE COMPANY *v.*
### Mrs. Donald Lee DAVIS, Individually and as Adm'x

5-5114                                          449 S. W. 2d 192

Opinion delivered January 26, 1970

*Moses, McClellan, Arnold, Owens & McDermott,* for appellant.

*Macon, Moorhead & Green,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant seeks reversal of a decree holding that appellee was entitled to specific performance of a certificate of credit life insurance under a master policy issued by appellant to The Peoples National Bank at Stuttgart. The insurance was taken to secure the payment of a note executed by appellee's decedent to the bank on December 5, 1966. Application was made on December 7, 1966. Appellee, the wife of her decedent, went to the bank on the latter date to inquire about the availability of this insurance and obtained an application which she took to her husband, Donald L. Davis. Mr. Davis signed the application to appellant and a certificate representing that on the date of issuance he was in "good and sound health." Appellant defended appellee's suit brought after the insured's death on the ground that the certificate never became effective because the insured misrepresented the true condition of his health and that it issued the policy in reliance upon the truthfulness of his representation.

Davis died on February 25, 1967. The death certificate signed by Dr. W. Sexton Lewis reflected that death was caused by basilar artery thrombosis due to cerebral atherosclerosis, due to postoperative left carotid endarterectomy with patch graft angioplasty and arteriosclerotic heart disease. It also reflected that the heart disease first manifested itself in November, 1966. An autopsy report revealed that the decedent suffered from generalized arteriosclerosis, marked coronary atherosclerosis with occlusion, left anterior descending branch, old and recent myocardial infarction, cardiac hypertrophy and dilatation, and cerebral arteriosclerosis.

Davis was a patient of Dr. E. A. McCracken of Stuttgart beginning in 1964. Dr. McCracken and his associate Dr. Holten thought that Davis might have had heart trouble in August, 1966, because of pains in his chest. Dr. McCracken prescribed nitrate pills to dilate Davis' blood vessels and improve circulation to his heart. This physician said he had administered nitro-

glycerin to Davis on one occasion. When the pain persisted until sometime in October, 1966, Dr. McCracken sent him to the Little Rock Diagnostic Clinic.

Davis was seen by Dr. W. Sexton Lewis in the Little Rock Diagnostic Clinic on November 1, 1966. Dr. Lewis reported by letter dated November 3, 1966, to Dr. McCracken. It revealed the following: Davis told this doctor that about 10 years ago he began to have chest pains with exertion, but about six weeks before coming to the clinic had commenced having dull anterior chest pain and dyspnea after walking only 500 feet or after a big meal. More recently there had been occasions when he was awakened by the pain, which lasted only five to ten minutes and disappeared when he got out of bed. Dr. Lewis indicated Davis' general health to be good, but reported the following impression, among others:

> Arteriosclerotic heart disease, negular sinus rhythm, compensated, angina pectoris; obesity, exogenous; hypertensive vascular disease, labile, not evaluated; atherosclerosis of left carotid, asymptomatic.

Dr. Lewis recommended a 50-pound weight reduction, nitroglycerin grains, continuation of hypertensive medication, a high protein, low carbohydrate, low fat diet, and a return for an office visit in six weeks. He stated that Davis had classical angina pectoris of increasing severity, and that selective coronary arteriography might be considered for surgery if progressive disability occurred. He added that Davis should be observed closely for signs of left carotid insufficiency. Appellee testified that Dr. Lewis discussed his findings with Davis but said that he did not discuss heart trouble or surgery, but concentrated on the necessity for diet and weight loss.

Dr. McCracken said that Davis came by to see him when he came back from the clinic and that he must have

discussed this report with him, but that he had no recollection or record of the visit or discussion. He received another letter from Dr. Lewis dated December 14, 1966, in which a weight loss of 10 pounds was reported and essentially the same treatment prescribed.

On February 5, 1967, Davis noted a transient burning sensation around both eyes. The next day he experienced transient blindness in both eyes and slight dizziness lasting for several minutes. Until his admission to Arkansas Baptist Hospital on February 13, he experienced transient episodes of dizziness with blurred vision almost daily, and on several occasions noted numbness of his tongue and the fingers of his left hand. An endarterectomy and angioplasty on the left carotid artery were performed on February 16, 1967, nine days before his death.

The master policy provided that no certificate should be effective if the certificate holder was not in good and sound health on the date of issuance.

The chancellor found that Davis had not misrepresented his condition of health, because he had no knowledge which would cause him to believe that he was not in good health. For reversal, appellant argues that Davis misrepresented his condition of health and that his false statement was material to, and increased, the risk. It also contends that it, in good faith, would not have issued the policy if the true facts had been made known to it as required by the application.

Arkansas Statutes Annotated § 66-3208 (Repl. 1966) provides that statements in applications for insurance are to be considered as representations and not warranties. It also provides that misrepresentations and incorrect statements shall not prevent recovery on a policy unless either: (a) fraudulent; or (b) material either to the acceptance of the risk, or to the hazard assumed by the insurer; or (c) the insurer in good faith would

either not have issued a policy or contract in as large an amount or at the same premium rate, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer, as required either by the application for the policy or contract or otherwise.

We have held that under this statute an insurance contract is tainted when a statement by an applicant which forms the basis for the issuance of the policy is untrue and material to the risk, regardless of whether it is actually fraudulent. *Life & Casualty Co. v. Smith,* 245 Ark. 934, 436 S. W. 2d 97. The question involved here then turns upon whether Donald Davis' statement as to the condition of his health can be considered to be an "incorrect statement" or an untrue one,[1] and not upon a question of his fraudulent intent, of which there is little evidence.

We feel that there is a clear preponderance of the evidence to show that Davis made an incorrect statement as to the condition of his health which was obviously material to the acceptance of the risk and to the hazard assumed by the insurer. We have defined "good health" in an application for life insurance to mean the insured is in apparent good health and free from such diseases as would seriously affect the risk. *Lincoln Reserve Life Ins. Co. v. Smith,* 134 Ark. 245, 203 S. W. 698. See also *Aetna Life Ins. Co. v. McAdoo,* 115 F. 2d 369 (8th Cir. 1940). There is really no material difference in the terms "good health" and "sound health." The term "good and sound health" does not imply physical perfection or freedom from temporary or trivial ailments. It has been held that in order to be in good or sound health, as the terms are here employed, one must enjoy such health as to justify the reasonable belief that

---

[1]This might not be the case if issuance of a policy was based upon a physical examination by a physician selected or designated by the insurance company.

he is not only free from derangement of organic functions but free from symptoms calculated to cause reasonable apprehension of such derangement. *Liberty National Life Ins. Co.* v. *Hopkins,* 106 Ga. App. 829, 128 S. E. 2d 339 (1962); *Chambers* v. *Metropolitan Life Ins. Co.,* 235 Mo. App. 884, 138 S. W. 2d 29 (1940). In some jurisdictions, it is said that if one is in good health it means in apparent good health and without ostensible, known or felt symptoms of disorder. See *Sovereign Camp, W. O. W.* v. *Brown,* 94 Okla. 277, 221 P. 1017 (1923). We take our definition of good health above recited to be subject to the qualification that, insofar as a statement by an insured in an application for insurance is concerned, one must be justified in the belief that he is free of symptoms which should cause reasonable apprehension of disease which would materially affect the risk.

While the diagnosis made by Dr. Lewis may not have been made known to Davis prior to his application for credit life insurance, the conclusion that his statement as to his health was incorrect seems to us to be inescapable. His persistent chest pains, the prescription of nitrates, his examination by Dr. Lewis, the prescription of a diet and a program of weight loss, are certainly inconsistent with apparent "good and sound health," and constitute indications of an organic disorder. A diagnosis of arteriosclerotic heart disease, atherosclerosis of left carotid, and classical angina pectoris of increasing severity must certainly be considered to have shown that Davis was not free from such disease as would materially affect the hazard assumed by the insurer. We feel that the preponderance of the evidence shows that Davis made an incorrect statement as to his condition of health material to the hazard assumed which precludes recovery on the certificate.

We have held that materiality to the risk is a question of fact so long as the matter is debatable, but a question of law when so obvious that a contrary infer-

ence is not permissible. *Old Republic Ins. Co.* v. *Alexander,* 245 Ark. 1029, 436 S. W. 2d 829. The circumstances of this case are such that we do not feel that an inference that Davis' condition was not material to the risk could properly be drawn.

The conclusion we have reached renders discussion of other arguments made by both parties unnecessary. The decree is reversed and the cause dismissed.

GEORGE ROSE SMITH, J., concurs.