ALLEN E. MARSHALL ET UX *v.* PRUDENTIAL
INSURANCE COMPANY OF AMERICA

5-5991                          484 S.W. 2d 892

Opinion delivered October 2, 1972

*Cockrill, Laser, McGehee, Sharp & Boswell,* for appellant.

*Rose, Barron, Nash, Williamson, Carroll & Clay,* for appellee.

CARLETON HARRIS, Chief Justice. This appeal relates to claim for hospital and medical benefits under the terms of a policy issued to appellants, Allen E. Marshall and his wife

Loretta Marshall, by appellee, Prudential Insurance Company. Application was made on March 26, 1969, and the policy was issued to Mr. Marshall and also provided coverage for Mrs. Marshall. From November 6, 1969, through November 22, 1969, Mrs. Marshall was hospitalized and subsequently, claim was made to appellee for benefits in the amount of $795.50. The company delined to pay on the basis that material information as to Mrs. Marshall's health had been withheld at the time of making the application, and the Marshalls thereafter instituted suit seeking payment.[1] The company tendered into the registry of the court the sum of $214.71 representing all premiums paid by appellants, and following trial, the Pulaski County Chancery Court entered its decree in favor of appellee holding that the company was entitled to a rescission of the insurance policy. From such decree, appellants bring this appeal. For reversal, it is simply urged that the finding of the chancellor is against the preponderance of the evidence.

The record reflects that Charles B. Hume, a soliciting agent for Prudential, approached Allen Marshall in regard to the purchase of life insurance. Marshall replied that he was not interested in life insurance but might be interested in hospitalization insurance and an appointment was accordingly set up at the Marshall home. At the home, Hume took the application, asking questions of appellants, and filling out the answers himself. Admittedly, the application form as to Mrs. Marshall was not an accurate reflection of her medical record. However, appellants testified that they gave accurate information in replying to the questions, but apparently Hume did not place such information in the application. To the contrary, Hume testified that he placed all information given in the application. Basically, as to this phase of the litigation, the question boils down to which witnesses the chancellor believed.

While the record reflects that facts relating to female disorders suffered by Mrs. Marshall were not included in the application, further discussion of these ailments is

---

[1]The suit was instituted in the Pulaski County Circuit Court but was transferred to equity after appellee asked for rescission of the policy.

not required since the hospitalization was occasioned by phlebitis.[2] Mrs. Marshall testified that prior to the insurance application on March 26, she had gone to Dr. Chudy and Dr. Schratz of the Chudy-Schratz Clinic and that these visits were made because of cramping in her legs, a condition which she had had from two weeks to a month prior to consulting a doctor, and which she supposed was caused by standing on her feet while working at her father's restaurant. Her first visit to Dr. Chudy for this condition occurred on March 18, at which time the doctor prescribed Vasodilan for circulation. She said that she asked if her trouble could be varicose veins and that Dr. Chudy replied "Well, we don't know. It could be." Dr. Chudy testified that he did not tell Mrs. Marshall that she possibly had phlebitis, but that he might have told her that it was vascular trouble; he said he did not identify her condition as phlebitis until her discharge from the hospital in November 1969.

On March 25 she returned to the office and saw Dr. Schratz, at which time her right leg was worse. Dr. Schratz testified that he examined Mrs. Marshall on March 25, primarily in regard to the right leg and found that "she was tender in the popliteal area which is the back of the knee, so-to-speak, and suggested she continue the medication Doctor Chudy had placed her on, and suggested bed rest and heat to this area and asked her to return for a follow-up examination of this area". He said at that time he thought he "suspected probably a phlebitis", and that Dr. Chudy's notes reflected that the latter had made a tentative diagnosis of subsiding phlebitis on March 18. Chudy testified that he was sure that he did not tell Mrs. Marshall that she was suffering from phlebitis, and Dr. Schratz stated that he did not remember whether phlebitis was mentioned as a possibility. Mrs Marshall testified that she had never even heard of phlebitis at that time; according to her testimony, Dr. Schratz told her on March 25 to start wearing support hose. As previously stated, there is no dispute but that these trips with regard

[2]According to Volume 2, Schmidt's Attorneys' Dictionary of Medicine, phlebitis is defined as "Inflammation of a vein. The condition occurs more often in persons with a sluggish circulation, especially after an operation or following childbirth. Occasionally clots form in an inflamed vein, a condition known as thrombo-phlebitis."

to the pain in her legs were made to Chudy and Schratz respectively on March 18 and March 25, though nothing concerning these visits appears in the application; in fact, the names of Chudy and Schratz do not appear in the application as it relates to Mrs. Marshall.

William H. Hawksworth, an underwriter with Prudential, testified that he had heard the testimony of Mrs. Marshall regarding her treatment by doctors Chudy and Schratz and if this information had been known to Prudential, the policy would not have been issued. He said that Mrs. Marshall was under the care of a physician and was taking medication and it is not the practice of the company to insure anyone who is currently receiving medical care. The witness stated that the company was governed somewhat by the "Health Insurance Medical Underwriting Manual" and that, had the facts been known, the physician would have been contacted and, if she was still under treatment, action on the application would have been postponed until such time as she recovered. He further stated that if there had been any suggestion in the application that Mrs. Marshall had been attended by a physician within the last two years, a statement from the physician would have been sought. Of course, it can readily be understood why a company would seek additional information if a prospective policyholder was receiving medical aid at the time of the application, and particularly so when the applicant had visited a doctor for aid just one day before submitting the application. Of course, appellants, if Mrs. Marshall was told nothing about phlebitis, could not have mentioned that ailment in the application, but, the difficulties with her legs, and the visits to the doctors should have been mentioned (appellants contending they were mentioned).

The facts in this case have some similarity to those in the case of *Dopson* v. *Metropolitan Life Insurance Company*, 244 Ark. 659, 426 S.W. 2d 410. In that case, there was also a dispute between the testimony of Dopson and his wife on the one side, and the insurance agent, Mullins, on the other, relative to whether it had been revealed that Mrs. Dopson had previously suffered from back trouble. The Dopsons testified that this information

was given while Mullins testified that it was not, though it was uncontradicted that she had had previous problems with her back. We commented that the chancellor found the issues in favor of the company "and we can not say that his finding is contrary to a preponderance of the evidence". Here too, we are unable to make such a finding. The chancellor observed the Marshalls and Hume as they testified, and he was in a much more favorable position than this court to evaluate the testimony. At any rate, we certainly cannot say that his finding was contrary to the preponderance of the evidence. The proof here reflects that the company would not have issued the policy had it been familiar with the actual facts as shown by the testimony, and we think the statement of the company official is consistent with the evidence in this case. That being true, appellants cannot prevail. See Ark. Stat. Ann. § 66-3208 (1) (c) (Repl. 1966); *Life & Casualty Co.* v. *Smith*, 245 Ark. 934, 436 S.W. 2d 97.

Affirmed.