Ellen R. FINDLEY, Administratrix of
the Estate of Delores A. WOLFE, Deceased
*v.* TIME INSURANCE COMPANY

80-67                                                    599 S.W. 2d 736

Supreme Court of Arkansas
Opinion delivered June 16, 1980

*Spears, Sloan & Johnson*, by: *James A. Johnson*, for

appellant.

*Rieves, Rieves & Shelton*, for appellee.

FRANK HOLT, Justice. The appellee issued an insurance policy providing major medical coverage to Delores A. Wolfe effective April 23, 1975, the date of the application. No physical examination was required. On July 9, 1975, Mrs. Wolfe consulted a doctor and was shortly thereafter diagnosed as having cancer of the cervix. When the appellee refused payment on expenses submitted by Mrs. Wolfe for extensive hospitalization and medical treatment in connection with the cancer, she instituted this suit. The appellee pleaded an affirmative defense pursuant to Ark. Stat. Ann. § 66-3208 (c) (Repl. 1966), primarily asserting that Mrs. Wolfe was experiencing abnormal vaginal bleeding prior to her application and, therefore, she had given a false answer to the following question on the insurance application:

To the best of your knowledge and belief have you or any dependents listed: . . .

Had a female disorder or any menstrual irregularity?

No.

The appellee also avers that this answer was material to its acceptance of the risk and that if Mrs. Wolfe had answered it truthfully, the policy would not have been issued to her. Mrs. Wolfe died during the pendency of this action which was revived in the name of her administratrix, the appellant.

A jury returned a verdict for the appellant in the amount of $11,815.49, the amount of medical expenses stipulated by the parties. The court, after finding the answer as to menstrual irregularity incorrect and the insurer would not have issued the policy had the true facts been known, entered a judgment n.o.v. in favor of the appellee. Hence this appeal.

The appellant first contends that the trial court erred in entering the judgment n.o.v. as there was substantial evidence to support the jury verdict. A judgment n.o.v. is

proper where there is no substantial evidence to support the jury verdict, and one party is entitled to a judgment as a matter of law. *Westside Motors* v. *Curtis*, 256 Ark. 237, 506 S.W. 2d 563 (1974); and *Spink* v. *Mourton*, 235 Ark. 919, 362 S.W. 2d 665 (1962). On appeal we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the party against whom the judgment n.o.v. is rendered. *Westside Motors* v. *Curtis, supra*. The substantiality of evidence is a question of law. *Pickens-Bond Construction Co. et al* v. *Case*, 266 Ark. 323, 584 S.W. 2d 21 (1979). There we recognized:

> Substantial evidence has been defined as 'evidence that is of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other. It must force or induce the mind to pass beyond a suspicion or conjecture.' Ford on Evidence, Vol. 4 § 549, page 2760. Substantial evidence has also been defined as 'evidence furnishing a substantial basis of fact from which the fact in issue can reasonably be inferred; and the test is not satisfied by evidence which merely creates a suspicion or which amounts to no more than a scintilla or which gives equal support to inconsistent inferences.'

See also *Ark. S&L Bd.* v. *Central Ark. S&L*, 260 Ark. 58, 538 S.W. 2d 505 (1976).

In support of appellant's argument of substantial evidence to support the jury verdict, she recites Mrs. Wolfe's perfect work record before the application; she had worked the regular 40 hours per week until July 9, almost two and one-half months after the application was completed; she had not consulted a doctor for more than 11 years prior to the July 9th appointment; the testimony of two doctors to the effect that it is impossible to determine when the cancer was first present; menopause, which Mrs. Wolfe believed she was experiencing, is a normal episode for women; she first noticed symptoms of illness, excessive or almost daily vaginal bleeding and irregular menstrual periods, in mid-June or about two weeks before making a doctor's appointment at the suggestion of her employer; she thought any bleeding was

associated with menopause. She had no illness of any kind to her knowledge and considered herself in good health at the time the application was completed. Therefore, it is asserted, she was not experiencing any menstrual irregularity on April 23 and answered the question truthfully.

However, she further stated in her deposition that she told her doctor on July 9 that she had been bleeding vaginally almost every day for the past two months. She didn't know exactly what day it started. This doctor testified that, although his records were unclear, she told him that for two and one-half months she had been experiencing either hot flashes, cramps, or bleeding. Her normal menstrual cycle was five or six days every 28 days. Another physician testified that she told him she had a one year history of heavy vaginal bleeding with a frequency of every two weeks, and she had noted a change in her menstrual cycle one year prior to her admission to the hospital. Mrs. Wolfe did not deny or recall making this statement or that she stated to him a history of gradual progressive vaginal bleeding. She did recall telling this doctor at the hospital, where she was admitted for treatment in August, 1975, that she had experienced heavy vaginal bleeding every two weeks starting in April of 1975. She then verified that she first noticed the heavy bleeding around the first of April, 1975, and it was the same type of menstrual period that she was having prior to that.

The issue presented is whether the female disorder or menstrual irregularity manifested itself to her knowledge nad belief before or after the application. It is not whether she was in good health when she made the application. When we review the appellant's evidence most favorably to her, as we must do on appeal, we cannot reasonably and confidently infer from its inconsistencies and uncertainties that there is substantial evidence to support the jury's verdict.

Appellant next contends the appellee failed to establish that the false answer on the application was material to the placement of the coverage or that the appellee was prejudiced thereby. It is argued that permitting the underwriter for the appellee to answer a hypothetical, cumulative question was improper and prejudicial. Suffice it to say that the

underwriter specifically testified without contradiction that the policy would not have been issued had the true facts been revealed.

Affirmed.

PURTLE and STROUD, JJ., dissent.

JOHN I. PURTLE, Justice, dissenting. I cannot agree with the majority in this case. The case turns on one question and answer. The question is:

> To the best of your knowledge and belief have you . . . had a female disorder or any menstrual irregularity?

The answer was in the negative.

The appellant testified she thought she was going through menopause, and in such cases she thought it was normal for the menstrual period to be irregular. I cannot say as a matter of law it was not her belief that this was a normal or natural occurrence. After all, she had not seen a doctor in more than 11 years prior to the time she applied for this insurance policy. She continued to work full time for several months after the policy was issued before she consulted a doctor. There is nothing in this case to persuade me that the appellant did not actually believe her health was normal at the time she answered the critical question.

Her confusing response to the questions came many months later when she was ill and was on her death bed. She weighed approximately 57 pounds and was taking medication at the time her deposition was taken. Certainly, there was reason for her to be confused about questions propounded to her by experienced counsel.

Another reason I dissent is because the trial court allowed the jury to decide the question. After the jury found in favor of the appellant, the court set the verdict aside. If there was enough evidence to go to the jury, there was enough evidence to support the verdict. Nothing changed the evidence between the submission of the case to the jury and

the setting aside of the verdict. Had the jury decided the other way, I would have been agreeable to affirming the verdict.

I am authorized to state that Stroud, J., joins me in this dissent.