Randy Lee McQUAY, Personal Representative of the
Estate of Aubrey McQuay, *Deceased v.*
ARKANSAS BLUE CROSS and BLUE SHIELD and
HealthCare Insurance of Arkansas, Inc.

CA 02-618                                    98 S.W.3d 454

Court of Appeals of Arkansas
Division III
Opinion delivered February 26, 2003

[Petition for rehearing denied April 2, 2003.]

*Branch, Thompson, Philhours, Warmath & Hitt*, by: *Robert F. Thompson III*, for appellant.

*Orr, Scholtens, Willhite & Averitt, PLC*, by: *Chris A. Averitt* and *Jay Scholtens*, for appellee Arkansas Blue Cross & Blue Shield.

*Womack, Landis, Phelps, McNeill & McDaniel*, by: *J. V. Phelps* and *Pamela A. Haun*, for appellee HealthCare Insurance of Arkansas, Inc.

JOHN MAUZY PITTMAN, Judge. In this case, an insurer, appellee Arkansas Blue Cross and Blue Shield ("BCBS"), rescinded a health policy issued to appellant's late father, Aubrey McQuay. After appellant sued BCBS for breach of contract, BCBS filed a motion for summary judgment, which was granted by the trial court. Appellant contends on appeal that the trial court erred in granting summary judgment because genuine issues of material fact remain to be decided. We agree, and we reverse and remand.

On February 18, 2000, Aubrey McQuay visited the Jonesboro office of BCBS agent HealthCare Insurance ("HCI") and filled out an application for health coverage. There is some controversy as to whether Aubrey filled out the application by his own

hand or gave verbal responses that were recorded by the agent, but that is of no importance because it is undisputed that Aubrey answered "No" to the following question: Have you or any other person to be insured ever had any diagnosis of or been advised to have treatment for disease or disorder of the lungs or respiratory system? Despite Aubrey's negative answer to this question, he had visited his physician, Dr. Danny Holt, in February 1999, approximately one year before the application was made, and two X-ray reports were generated as a result of that visit. One reflected a physician's impression of "pulmonary fibrosis and emphysema," and the other contained an assessment of "evidence of COPD [Chronic Obstructive Pulmonary Disease]." Nevertheless, BCBS, being unaware of these diagnoses and relying on Aubrey's answer, issued a health policy to him.

Shortly after the policy was issued, Aubrey visited Dr. Holt, complaining of weight loss and difficulty swallowing. After a series of tests and other doctor visits, he was diagnosed in July 2000 with lung cancer. He received treatment from, among others, Dr. Michael Raborn, who characterized Aubrey's condition as follows: "When I treated Aubrey McQuay, he had Stage IIIB lung carcinoma and a tracheosophageal fistula. In layman's terms, Mr. McQuay had lung cancer that ate a hole in his esophagus."

Aubrey died on February 4, 2001. However, before his death, BCBS sent him a letter rescinding his policy on the ground that his answer to the above question was false.[1] Thereafter, appellant filed the lawsuit that is the subject of this appeal. Following discovery, BCBS filed a motion for summary judgment, arguing that Aubrey's negative answer regarding his diagnosis of a respiratory disorder was false and that, had Aubrey told the truth about the diagnosis, BCBS would not have issued the policy. Attached to the motion was the affidavit of Gerald LaFerney, BCBS's Manager of Individual Underwriting. LaFerney's affidavit confirmed that, had BCBS known of Aubrey's COPD, it would not have issued the policy. Laferney referenced specific under-

---

[1] The letter also referred to two other questions, but Aubrey's answers to those questions are not pertinent to our discussion of the issue at hand.

writing guidelines, which provided that a person diagnosed with COPD could only be insured if he was a non-smoker or had quit smoking for more than a ·year. The evidence is undisputed that Aubrey was a smoker at the time of his application, a fact that the application correctly reflects.

In responding to the motion for summary judgment, appellant seized upon the possibility that his father was unaware he had been diagnosed with COPD. Appellant testified in his deposition that his father did not know he had been so diagnosed, nor did he know what COPD was. Appellant argued that Aubrey's ignorance of a COPD diagnosis was significant because, upon completing the application, Aubrey signed it just above a line containing the following language: "In signing below, I . . . represent that the statements and answers given in this application . . . are true, complete, and correctly recorded *to the best of my knowledge and belief* . . . ." (Emphasis added.)  In light of this language, appellant argued, Aubrey's answer on the application was not a misrepresentation because he answered "to the best of his knowledge and belief."

Following a hearing, the trial court found that Aubrey was not necessarily aware of the findings of COPD and other respiratory ailments contained in the X-ray reports, nor did he have knowledge of any sort of abnormal lung condition at the time he completed the application. Therefore, the court concluded, a fact question remained as to whether Aubrey's alleged misstatement in the application was fraudulent. The court also found that a fact question remained as to whether Aubrey's alleged misstatement was material to BCBS's acceptance of the risk. However, the court found there was no dispute that, had BCBS known of Aubrey's pulmonary condition, it would not have issued the policy, and the court granted summary judgment on that basis.

■ ■ On appellate review of summary judgment, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material question of fact unanswered. *Sweeden v. Farmers Ins. Group*, 71 Ark. App. 381, 30 S.W.3d 783 (2000). The moving party bears the burden of sus-

taining a motion for summary judgment. *Id.* All proof must be viewed in the light most favorable to the resisting party, and any doubts must be resolved against the moving party. *Id.*

■ Arkansas law provides three statutory grounds for which a health insurer may rescind a policy for misstatements in the application:

> (a) All statements in any application for a life or accident and health insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:
>
> (1) Fraudulent;
>
> (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
>
> (3) The insurer in good faith would not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the same premium or rate or would not have provided coverage with respect to the hazard resulting in the loss if the facts had been made known to the insurer as required by the application for the policy or contract or otherwise.

Ark. Code Ann. § 23-79-107(a) (Supp. 2001). The trial court found that fact questions remained as to grounds one and two, but that no factual issue remained as to ground three. However, the trial court neglected to make the threshold determination that Aubrey's answer constituted a "misrepresentation, omission, concealment of fact, or incorrect statement" as required by the preamble of subsection (a). If Aubrey's answer cannot be characterized by one of these descriptions, then subsection (a)(3), on which summary judgment was granted, is inapplicable. *See Phelps v. U.S. Credit Life Ins. Co.*, 336 Ark. 257, 984 S.W.2d 425 (1999).

■ Our inquiry on appeal, therefore, is whether, as a matter of law, Aubrey's answer was a misrepresentation, omission, concealment of fact, or incorrect statement. We first address appellant's contention that Aubrey's statement was not a "misrep-

resentation," an apparent reference to the possibility that Aubrey did not knowingly make a false statement. However, a misrepresentation is only one type of misstatement that may prevent recovery under a policy. Recovery may also be precluded when an applicant makes an "incorrect statement." An incorrect statement may justify rescission regardless of whether it was made with fraudulent intent. *See also Life & Cas. Ins. Co. of Tenn. v. Smith,* 245 Ark. 934, 436 S.W.2d 97 (1969); *Langlois v. Wisconsin Nat'l Life Ins. Co.,* 19 Wis. 2d 151, 119 N.W.2d 400 (1963). Thus, our analysis does not end with the fact that Aubrey's statement may not have been fraudulent. We must determine whether Aubrey's answer was "incorrect." The key to this determination is the import of Aubrey being asked to answer the application question "to the best of his knowledge and belief."

The application in this case is formatted in such a way that, following a list of health-related questions, a rather lengthy dissertation ensues, informing the insured, among other things, that he represents his answers to be true, complete, and correctly recorded to the best of his knowledge and belief. The applicant is then asked to sign the application. We believe this has the effect of prefacing each question with the phrase, "to the best of your knowledge and belief." For example, the question asked of Aubrey McQuay in this case was, effectively, "to the best of your knowledge and belief, have you or any other person to be insured ever had any diagnosis of or been advised to have treatment for disease or disorder of the lungs or respiratory system?"[2]

Viewing the application question in this light, the issue becomes whether Aubrey's answer of "no" to that question was incorrect. BCBS argues that, regardless of what Aubrey knew or believed, he had in fact been diagnosed with COPD; thus, he made an incorrect statement that provided a ground for rescission. BCBS relies on *American Family Life Insurance Company v. Reeves,*

---

[2] BCBS argues that the use of the phrase serves only to inform the applicant of the serious nature of the information provided and to emphasize the criminal penalties that could be imposed for knowingly providing false information. At the least the application is ambiguous in this regard, in which case it would be construed against BCBS. *See generally Phelps v. U.S. Credit Life Ins. Co., supra.*

248 Ark. 1303, 455 S.W.2d 932 (1970), to support its contention. *Reeves* involved a cancer policy issued on the basis of the following answers contained in the application:

> 1. To the best of your knowledge, does any member of the family group to be insured now have or ever had cancer?
>
> 2. To the best of your knowledge, has any member of the family group to be insured ever had: (a) lumps, growths, or swellings; (b) sores that have not healed; (c) coughed or vomited blood.

The applicant, George Reeves, answered "no" to these questions. When his wife was diagnosed with cancer ten months later, the insurer rescinded the policy on the ground that she had suffered removal of an eye due to a malignant growth or tumor eight years prior to the effective date of the policy. Reeves asserted that neither he nor his wife had been informed that the eye was removed due to a cancerous condition. The insurer nevertheless sought rescission on the basis that it would not have issued the policy, had it known the truth. The supreme court made the following statement:

> Logically, in the circumstances of the case at bar, this affirmative defense cannot be construed to be affected by the "[t]o the best of your knowledge" qualifying phrase in the questions of the application. The "true facts" referred to in subsection (c) [now (a)(3)] relate to whether or not there was a pre-existing malignant growth, as contended by appellant, and not to whether the appellee had actual knowledge of this condition.

*Id.* at 1308, 455 S.W.2d at 936. Although the court appears to say that the same subsection (a)(3) ground that BCBS asserted in this case may be relied upon by an insurer as grounds for rescission regardless of how the applicant's answer is characterized, we consider the court's statement to be dicta because it did not base its decision on this statement, but instead decided the case based on Reeves's actual, firsthand knowledge that his wife had a "growth" as contemplated by question number two. Furthermore, this dicta is contrary to the court's more recent determination that, before the subsection (a) grounds may be successfully asserted, it must first be shown that the applicant has made a misrepresentation,

omission, concealment of facts, or incorrect statement. *See Phelps v. U.S. Credit Life Ins. Co., supra.*

We believe that a sound approach is evidenced by the language employed by the supreme court in *Findley v. Time Insurance Co.*, 269 Ark. 257, 599 S.W.2d 736 (1980) and *American Republic Life Insurance Co. v. Edenfield*, 228 Ark. 93, 306 S.W.2d 321 (1957). In *Findley*, a health insurance applicant was asked if, to the best of her knowledge and belief, she had ever had any menstrual irregularities. She answered "no," but in fact she had suffered such problems extensively. The supreme court agreed with the trial court that the insurer was entitled to rescind the contract, but the important point for our purposes is that the court characterized the issue as follows: "The issue presented is whether the female disorder or menstrual irregularity *manifested itself to her knowledge and belief* before or after the application. It is not whether she was in good health when she made the application." Findley, 269 Ark. at 260, 599 S.W.2d at 739 (emphasis added). In *Edenfield*, a life insurance applicant represented that he did not have arteriosclerosis and had not undergone any treatment for it. The application contained the recital that "the above statements and answers are full, true and complete to the best of my knowledge and belief." The supreme court stated: "From all the competent evidence we think the preponderance is to the effect that the deceased was justified in believing that he had no heart disease . . . ."

We think that these two cases stand for the proposition that, when an applicant is asked to respond to a question to the best of his knowledge and belief, his actual knowledge and belief concerning his condition are relevant. We note that other authorities so hold. *See Hauser v. Life Gen. Sec. Ins. Co.*, 56 F.3d 1330 (11th Cir. 1995); *William Penn Life Ins. Co. v. Sands*, 912 F.2d 1359 (11th Cir. 1990); *Carter v. United of Omaha Life Ins. Co.*, 685 So.2d 2 (Fla. Ct. App. 1997); *Sterling Ins. Co. v. Dansey*, 195 Va. 933, 81 S.E.2d 446 (1954).

In light of the above, we hold that a fact question remains as to whether Aubrey McQuay made an incorrect statement in his answer on the application. We observe that, in addi-

tion to appellant's testimony that Aubrey was unaware of his condition, Dr. Holt's progress note dated 2/18/99 (the same date the X-rays were taken) mentions only "some degree of COPD," and contains the notations "Bronchitis and sinus congestion" and prescribes a pill for sinus congestion and a Nicotrol Inhaler to help Aubrey quit smoking. Further, the trial court specifically found that Aubrey was not necessarily aware of his diagnosis. Thus, a jury might conclude that, to the best of Aubrey's knowledge and belief, he had not been diagnosed with COPD.

■ We also reject BCBS's alternative reason for affirmance that the incorrect statement in the application was material to its acceptance of the risk. *See* Ark. Code Ann. § 23-79-107(a)(2). The trial court explicitly found that a fact question remained on this point. Further, the subsection (a)(2) defense requires the insurer to show a causal relationship between the misrepresentation and the hazard resulting in the loss. Ark. Code Ann. § 23-79-107(c). A fact question exists on that issue by virtue of Dr. Michael Raborn's statement in his affidavit that COPD is not caused by lung cancer.

■ Finally, as to the separate appellee HCI, it was sued by appellant for negligence in recording an answer on the application to a question not at issue in this appeal. The trial court granted summary judgment to HCI on the basis that BCBS properly rescinded the policy. Therefore, the two rulings being intertwined, we likewise reverse the summary judgment granted to HCI.

Reversed and remanded.

NEAL, J., agrees.

VAUGHT, J., concurs.

L ARRY D. VAUGHT, Judge, concurring. I concur in the result reached by the majority only because we are bound by the interpretation of Ark. Code Ann. § 23-79-107 set forth by the supreme court in *Phelps v. U.S. Life Credit Life Ins. Co.*, 336 Ark. 257, 984 S.W.2d 425 (1999). *Phelps* established that an insurer cannot rely on section 23-79-107(a)(3) to rescind a policy if an applicant, in good faith, answered a question concerning a

pre-existing medical condition in the negative, even though the empirical fact of the preexistence of the condition was proven. The trial court in this case found that a question of fact remained as to the applicant's knowledge of the lung condition; therefore, summary judgment is not appropriate, and we must reverse.

I do not agree with the majority's analysis which attempts to reach the same conclusion as *Phelps* using prior case authority. Arkansas Code Annotated § 23-79-107(a) provides:

> (a) All statements in any application for a life or disability insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:
>
> (1) Fraudulent;
>
> (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
>
> (3) The insurer in good faith would not have issued the policy or contract or would not have issued the policy or contract in as large an amount or at the same premium or rate or would not have provided coverage with respect to the hazard resulting in the loss if the facts had been made known to the insurer as required by the application for the policy or contract or otherwise.

This statute has been on the books in substantially this same form since 1959, having been adopted by Act 148 of 1959. The purpose of the provision is found in the first sentence where statements in insurance applications are held to be representations and not warranties. Prior to Act 148 of 1959 the law provided that such statements were warranties. *See* Ark. Stat. Ann. § 66-1015 (1947). Because insurers could no longer rely on the warranties of their applicants, they were given three grounds for rescinding a policy if it were determined that a statement made on the application was a misrepresentation, omission, concealment of fact, or incorrect statement. As quoted in *Life and Casualty Ins. Co. v. Smith*, 245 Ark. 934, 938, 436 S.W.2d 97, 99 (1969), Couch on Insurance 2d, 35:24, states:

> If it is shown that the misrepresented matter was material to or increased the risk it is immaterial and irrelevant that the insured

had acted in good faith without any bad motive or intent to deceive. This means that if a representation is made which is untrue and material it taints the contract, whether fraudulent or not, and if untrue and fraudulent, it taints the contract, whether material or not.

This analysis was used by the supreme court to uphold the rescission of a policy where it was shown that the applicant had no knowledge of his wife's preexisting condition in *Dopson v. Metropolitan Life Ins. Co.*, 244 Ark. 659, 426 S.W.2d 410 (1968). Similarly, in *Union Life Ins. Co. v. Davis, Adm'x*, 247 Ark. 1054, 449 S.W.2d 192 (1970), the supreme court reversed and dismissed a judgment for the insured where the deceased stated on his application that he was in good health (and thought he was), but it was determined that he suffered from coronary artery disease at the time of the application. *See also Marshall v. Prudential Ins. Co.*, 253 Ark. 127, 484 S.W.2d 892 (1972), and *American Family Life Assur. Co. v. Reeves*, 248 Ark. 1303, 455 S.W.2d 932 (1970).

Each of these cases is similar to the instant case in that the applicant, in good faith, attested to good health, and the company relied on the representation and issued a policy. In each case the proof reflected that a preexisting condition caused the death or loss to the insured, and in each case the company asked for rescission based on section 23-79-107(a)(3). While there were different degrees of knowledge of the insured about the omitted condition, the court always reached the defense in subsection (a)(3). This is because the court consistently interpreted "incorrect statement" to mean what it says. The applicant's subjective belief about his health does not make a statement about his health any more or less correct. The supreme court was consistent in these cases and applied a rational analysis of the statute. Even the cases relied on by the majority do not mandate a different result. *American Republic Life Ins. Co. v. Edenfield*, 228 Ark. 93, 306 S.W.2d 321 (1957) predates the statute in question by two years and has little, if any, value in construing it. Also, *Edenfield* was primarily concerned with doctor-client privilege and scope of discovery. The other principal case relied on in the majority opinion is *Findley, Adm'x v. Time Ins., Co.*, 269 Ark. 257, 599 S.W.2d 736 (1980). This

case affirmed a judgment for the insurer and is cited by the majority for what amounts to dicta.

This brings us to *Phelps, supra*, the latest construction of section 23-79-107(a)(3). In that case, the applicant did not disclose prior heart problems because he misinterpreted a question on the application. The trial court found that the decedent answered in good faith and that the question was ambiguous, but that section 23-79-107(a)(3) applied and allowed the company to rescind. The supreme court reversed, holding that the question was ambiguous and it should be construed against the insurer. It further held that section 23-79-107(a)(3) did not apply because the applicant was truthful when he answered no to the question on the application, and therefore, there was no incorrect statement. I believe that this second holding in *Phelps* does not follow prior authority and does not reflect a reading of the clear language of Ark. Code Ann. § 23-79-107(a)(3). However, it is the law and we are constrained to follow it. Therefore, I concur.