JANIE LOREAN EDWARDS, ADM'X v. T. H. EPPERSON & SON HOUSE MOVING CO., INC.

5-4759                                    437 S.W. 2d 480

Opinion Delivered February 24, 1969

*Fred A. Newth, Jr.* and *Billy B. Bowe* for appellant.

*Cockrill, Laser, McGehee, Sharp & Boswell* for appellee.

CARLETON HARRIS, Chief Justice. Janie Lorean Edwards, appellant, widow of Charlie Howard Edwards, and administratrix of his estate, instituted suit for his wrongful death against T. H. Epperson & Son House Moving Company, Inc., appellee herein, and Arkansas Power & Light Company. Prior to trial, a non-suit was taken against the power company, and the case proceeded to trial against the Epperson Company. When appellant completed her case, appellee moved for a directed verdict. The motion was overruled, and the cause was submitted to the jury. A verdict was returned in the amount of $96,250.00 for appellant, and a motion was then made by appellee for a judgment *non obstante veredicto.* The court granted the motion, and entered a judgment for appellee, dismissing appellant's complaint with prejudice. From this judgment, appellant brings this appeal.

The complaint alleged that Edwards was killed while engaged in moving a house on U.S. Highway 67. It was asserted that Edwards, who was riding on top of the house, was struck by a guy wire, which had been placed across the highway by the power and light company. Further allegations were to the effect that the truck was being driven by Ed Epperson, an agent and employee of the Epperson Company, and that the death of Edwards was the result of the negligence of the driver, who was traveling at an excessive rate of speed, failed to keep a proper lookout, failed to use proper control, and did not heed a warning to stop. Appellee's position is that it was established at the time of the accident that Epperson was employed and acting on behalf of D. F. Arey, who was also engaged in the business of hauling houses. After the jury verdict, the court concluded that, though there was sufficient evidence as to negligence and proximate cause to justify submission of the case to the jury, there was not sufficient evidence

that Epperson was acting for and in behalf of Epperson & Son House Moving Company to make a jury question. On this basis alone, the n.o.v. judgment was rendered.

For reversal of the court's judgment, it is first argued that the court had no authority to enter a judgment notwithstanding the verdict, and it is contended that this would have been proper only if the pleadings had shown conclusively that one of the parties was entitled to a judgment as a matter of law. It is asserted that the court could do no more than set aside the jury verdict, and this action would, of course, permit another trial. Appellant is in error. In *Stanton* v. *Arkansas Democrat Company,* 194 Ark. 135, 106 S.W. 2d 584, this court was presented the same argument, but we disagreed, pointing out that there is a distinction between a case where a final judgment has been rendered and entered of record, and where only a jury verdict has been received, and we held that in the last instance, a judgment *non obstante veredicto* could be entered. The court said.

"The question there reserved[1] is now decided, and we hold that after a verdict has been returned, but before the entry of judgment thereon, the court has the jurisdiction to determine whether judgment shall be entered, and, if so, what judgment, and if it be found by the court before the entry of judgment that no testimony has been offered to sustain the verdict, and that no cause of action has been shown to exist, the court has the jurisdiction to so declare and to direct the judgment which shall be entered. If it is thought that the court has acted erroneously a bill of exceptions should be filed, which would afford us on the appeal the opportunity to pass upon the question whether, under the testimony, a verdict should have been directed in

[1]This had reference to the case of **Scharff Distilling Company v. Dennis,** 113 Ark. 221, 168 S.W. 141.

favor of the party for whom judgment was rendered."

In a much more recent case, *Spink* v. *Mourton*, 235 Ark. 919, 362 S.W. 2d 665 (1962), the *Stanton* holding was reiterated. We stated:

"The verdict was in favor of Mourton. Now it is true that the trial judge might have granted a new trial if he found the verdict to be against the preponderance of the evidence. *Bockman* v. *World Ins. Co.*, 222 Ark. 877, 263 S.W. 2d 486. But this case does not involve a motion for a new trial; instead, the request was for a judgment notwithstanding the verdict. *Such a motion may be granted if there is no substantial evidence to support the verdict.*"[2]

Accordingly, the only question before us is whether there was sufficient proof that Ed Epperson, the driver of the truck, was an agent or employee of appellee company at the time of the accident. The evidence in support of this allegation is as follows:

1. Ed Epperson, the driver of the truck, is a vice-president of T. H. Epperson & Son House Moving Company, Inc.

2. Two other regular Epperson employees (Charlie Edwards and Obie Horn) were also on this particular job.

3. Raymond Edwards, son of the deceased, testified that he worked for Epperson "off and on" for two years prior to the date of the accident, and he said that, though Arey owned the tractor that was being used, the trailer was owned by Epperson. This witness stated that he and his father had "built" the trailer, though his subsequent testimony indicated that he meant they

---

[2]Emphasis supplied.

had lengthened it by three feet. He also said that he could itdentify it by a welding mark, this repair having been occasioned by a ripped place near the second wheel.

4. A permit had been obtained by Epperson from the Highway Commission to move a house from Malvern to a destination 14 miles north of Malvern, the job to be performed between May 12 and May 16. This permit was numbered 22018. Arey had also been issued a permit by the Highway Department to move a house from Malvern to a destination 14 miles north of Malvern, the job to be performed between May 12 and May 16. This permit was numbered 22019.

The evidence offered by appellee relative to these facts, in the order listed, was as follows:

1. Ed Epperson testified that Arey contacted him requesting that he (Epperson) help him in moving the building, because Arey's wife was in the hospital, and Arey wanted to take her home. Epperson said that he was paid $25.00 by Arey, which he spent; no money was paid to the Epperson corporation. Arey testified as follows:

> "On the day of the accident I called Mr. Epperson the night before and asked him if he wasn't too busy would he go down the next day and drive my truck while I come in and got my wife out of the hospital and I would be right back down there to take over."

2. Epperson testified that Edwards was working for Arey on the day in question, and was paid by Arey. Arey testified that he hired Edwards for this particular job at a rate of $20.00 per day, and he also said that he hired Horn on this job. The witness stated that he received all of the money for moving the house, and that the Epperson corporation received nothing.

3. Raymond Edwards testified that his father had worked on Arey jobs previously, and that he (Raymond) had also, on one occasion, worked on an Arey job.

On cross-examination, the witness admitted that he did not know who the trailer belonged to on the date of the accident, and he also conceded that another trailer could have been welded in the same place. Epperson testified that Edwards had nothing to do with building the trailer, and said that it was bought in Pine Bluff about 15 years ago.

4. This was the strongest circumstance offered by appellant, for it does seem unusual that these two permits were issued on the same date, consecutively numbered, permitting the moving of houses during the same period of time, approximately the same distance and in the same direction, from Malvern. Though this was the strongest evidence offered, strangely enough, appellee's evidence with regard to these facts, is probably the most convincing that it offered. An examination of the record reveals that different vehicles were undoubtedly involved. The Epperson application and permit reflect a truck license number of D402, and a trailer license number of ST6673, while the Arey application and permit show a truck license number of C838 and a trailer license, ST6455. The width of the load in the Epperson permit is shown as 20 feet, while the width of the load in the Arey application is 22 feet. Epperson testified that the job that occasioned his application involved moving a construction shack belonging to an asphalt plant, and Arey testified that his contract was to move a house for a Mrs. Moody.

We agree with the trial court that the evidence was insufficient to make a jury question. The testimony by Epperson and Arey that Epperson and Edwards were working for Arey on this occasion is undisputed. There is also some significance in the fact that Edwards,

though an employee of appellee, had, on other occasions, worked for Arey.

The testimony of Raymond Edwards is of no value, because he was unable to dispute the ownership of the trailer, *i.e.*, he admittedly did not know who owned the trailer on the day of the accident. While the information shown in the applications and permits would perhaps, at first blush, indicate the same moving job, this conclusion is shown to be erroneous when the applications and permits are more clearly examined. Very definitely, the permits show, not only that applications were made by two different persons, but more important, that two different trucks and trailers were to be used. We see no reason for appellee to have obtained two permits for the same haul. These permits were granted *five days before the accident,* and there would certainly have been no point at that time in endeavoring to create confusion as to which company had the job. In addition, a picture of the truck and trailer with the house upon it is in the transcript. This picture was taken by Don's Studio of Malvern after the accident, and very clearly shows the license numbers of both the truck and trailer belonging to Arey. Of course, we suppose it is possible that Epperson could own both trucks and trailers, but there is not a line of testimony to support such a supposition, nor does appellant make this suggestion or contention.

Complaint is made that the court erroneously refused to permit the sheriff to testify that Epperson, at the scene of the accident, presented a card, which would have identified him in his capacity with the appellee corporation. Objection was sustained when counsel asked what appeared on the card. We do not agree that error was committed. There was no effort to offer the card itself, which would, of course, have been the best evidence, and there was no evidence that the card had been lost. It may be that the officer simply looked at the card, rather than taking it, but this is not shown

Before the sheriff could have testified, it would have been necessary to make proof of why the card could not be presented. *Town and Country Trailer Sales, Inc.* v. *Godwin,* 233 Ark. 307, 344 S.W. 2d 338. Not only that, but no offer of proof was ever made showing what the sheriff's answer would have been had he been permitted to answer the question. It was necessary that this tender of proof be made.[3] *City of Little Rock* v. *Sawyer,* 228 Ark. 516, 309 S.W. 2d 30.

The court's action in granting the judgment *non obstante veredicto* was not error.

Affirmed.

---

[3]Even if the card identified Epperson as a vice-president of appellee company, it would not appear that this would have added very much to appellant's evidence, for Epperson, normally being associated with appellee company, might well have carried personal cards reflecting that fact.