848

BERNICE BAUCOM, INDIVIDUALLY AND AS NATURAL
GUARDIAN AND NEXT FRIEND OF LEONARD JOHNSON,
A MINOR *v.* THE CITY OF NORTH LITTLE ROCK

5-5433                                              462 S. W. 2d 229

Opinion delivered January 25, 1971

*Herrod & Cole,* for appellant.

*Teague, Bramhall, Davis & Plegge,* for appellee.

LYLE BROWN, Justice. Bernice Baucom, individually and as natural guardian of her minor son, Leonard Johnson, brought suit against the City of North Little Rock for injuries sustained by the boy while playing upon a piece of city equipment. The case was tried under the theory of attractive nuisance. The jury returned a verdict in favor of the minor. The court promptly set the verdict aside and entered judgment for North Little Rock. Appellant contends that a mo-

tion for judgment notwithstanding the verdict was not made, and that the court erred in its application of the law as applied to the case at bar.

On the day in question, the minor, Leonard Johnson, accompanied by a cousin about the same age, decided to go to a large field near Baring Cross Bridge in North Little Rock to play football. The bridge traverses the Arkansas River. The city runs a large pipe to the river, through which pipe flows sanitary and storm sewage. The pipe ends about twenty-five feet short of the usual water line. At the end of the pipe the city installed on a concrete block about eight by ten feet a piece of equipment about eight feet in height. The equipment is used to close the sewage pipe when the river floods, thereby preventing a back flow into the sewer system. The valve can be closed mechanically by turning a wheel, or it can be shut electrically. The switches which control the motor are housed in a metal box set on the concrete block and near the turning wheel. To protect the switches from the weather and from pilferage they are made secure by a metal door which is intended to be kept locked. On that day the door was apparently standing open, which made the switches available to anyone who wanted to activate the motor. When the equipment is activated, either mechanically or by hand, a large cog wheel, setting upright on top of the concrete block, turns. It is made to turn by means of a pipe connected to the manual wheel and the motor. That pipe has cogs on the end and the cogs fit into the large cog wheel.

Leonard Johnson was the only witness who testified to the incident giving rise to the lawsuit, and we summarize his description of the event which caused the injury. Leonard and his playmate decided to stop at the sewer lock to rest before continuing on to the ball field. There they decided to "ride the cogs." Both boys punched the buttons on the electrical switch box but the motor did not start. Leonard stood on top of the large cog in his tennis shoes and "rode" around the circle as his playmate operated the turning wheel. Suddenly the

motor became activated and Leonard's foot was caught between the large cog wheel and the cogs on the iron pipe. He received injuries to three of his toes, two of which had to be amputated.

The first impression would be that the playmate reached over and pushed the starter button, but the playmate denied to Leonard that he touched the button; nor did Leonard see him do it. It would be speculation to say that the playmate did start the motor; also, it is just as probable that when the two boys first punched the buttons it set in a delayed action that erupted when Leonard's foot was caught in the mechanism.

Recovery was sought on the basis of attractive nuisance. North Little Rock defended on the ground that Leonard assumed the risk. Those respective theories were submitted to the jury under AMI 304 (Ordinary Care of a Minor) and AMI 612 (Assumption of Risk).

At the close of appellant's testimony, appellee moved for a directed verdict and the court announced the motion would be held in abeyance. Appellee rested its case after putting on one witness. After the instructions, closing arguments, and deliberation, the jury returned its verdict in favor of the minor appellant. Thereupon the court announced to the jury that "on the basis of what I believe to be the applicable law upon motion of counsel for defendant for a judgment notwithstanding the verdict by the jury, judgment will be entered for the defendant." The court explained that he "had this thought at the time the motion was made at the close of the plaintiff's case." Continuing, the trial judge explained that instead of granting the motion for a directed verdict at that time, he permitted the trial to be fully completed; then "if the supreme court says my interpretation of the law is wrong, that these facts were sufficient to present a jury question," the appellate court could, without the necessity of ordering a new trial, direct the trial court to enter a judgment for the plaintiff, Leonard Johnson.

Appellant's first point for reversal is that the trial court erred in entering a judgment n.o.v. without a specific motion therefor by opposing counsel. It is clear to us that the trial court reserved its ruling on the motion for a directed verdict and that, after the jury returned, the motion was treated as a motion for judgment n.o.v. Although the better procedure, for sake of clarity, may have been for the appellee to have specifically moved for a judgment n.o.v., we see no error in the method used by the trial court; in fact that procedure was not objected to at the time. This court has recently, and more than once, approved the rule that the test for granting a motion for a directed verdict and the test for granting a motion for judgment n.o.v. are the same, namely, the substantial evidence test. Moreover, we have held that when a jury verdict has been received, the court may enter a judgment n.o.v. if there is no substantial evidence to support the verdict. *Edwards* v. *Epperson,* 246 Ark. 194, 437 S. W. 2d 480; *Spink* v. *Mourton,* 235 Ark. 919, 362 S. W. 2d 665 (1962); *Stanton* v. *Arkansas Democrat,* 194 Ark. 135, 106 S. W. 2d 584 (1937).

Finally, it is insisted that the court was in error in holding that Leonard Johnson was not entitled to the benefit of the attractive nuisance doctrine. The trial court explained that the doctrine was essentially reserved for children of tender years but that the factors of age, intelligence, and experience should be considered in any given case to determine if that particular minor acted as a reasonably careful child of the same age and intelligence would have acted. The trial court correctly stated the basic tests. *Garrison* v. *St. Louis, I. M. & S. R. Co.,* 92 Ark. 437, 123 S. W. 657 (1909); *Gates* v. *Plummer,* 173 Ark. 27, 291 S. W. 816 (1927); *Garrett* v. *Ark. P. & L. Co.,* 218 Ark. 575, 237 S. W. 2d 895 (1951); *Williams* v. *Gilbert,* 239 Ark. 935, 395 S. W. 2d 333 (1965). Leonard Johnson's age at the time of the mishap was fourteen years and nine months. He was in the ninth grade, made average grades, and lettered in football. He passed to the tenth grade notwithstanding he missed some school because of the injury. At the time of the trial

he was in the tenth grade and making good marks. His answers to questions were very responsible, intelligent, and evinced an alertness that is ofttimes not shown by adult witnesses. Viewing the evidence in the light most favorable to the minor, we agree with the trial court that the appellant minor was not entitled to the special consideration commonly given a child of tender years.

Affirmed.

JONES J., dissents.