## Sandra K. SATTERFIELD v. REBSAMEN FORD, INC.

5-6006                                    485 S.W. 2d 192

Opinion delivered October 9, 1972

*R. David Lewis,* for appellant.

*Charles W. Baker,* for appellee.

J. Fred Jones, Justice. This is an appeal by Sandra K. Satterfield from a judgment of the Pulaski County Circuit Court in favor of Rebsamen Ford, Inc. notwithstanding a jury verdict in favor of Sandra K. Satterfield.

The facts, as gathered primarily from the pleadings, indicate that on or about May 14, 1970, Sandra K. Satterfield purchased a Ford Fairlane automobile from Rebsamen Ford, Inc. through one of its salesmen, Lonnie Davis, for the agreed purchase price of $3,760.72. Miss Satterfield

traded in a 1967 Mustang automobile on the purchase of the Fairlane for an agreed credit of $511. She executed her note for the balance of the purchase price in the amount of $3,249.72, payable in 36 monthly installments of $90.27 commencing on June 25, 1970. It appears that Miss Satterfield was dissatisfied with the way the automobile drove on the highway and when it failed to pass safety inspection for the purpose of licensing within two months after she purchased it, she failed or refused to make the monthly payments so a replevin action was filed against her for repossession of the automobile.

Apparently Miss Satterfield did not resist the possessory action but she did file a counterclaim against Rebsamen Ford alleging that the salesman, Lonnie Davis, made false and fraudulent misrepresentations concerning the automobile she purchased, but it is difficult to determine from the transcript the exact status of the matter when it was finally tried in circuit court. Miss Satterfield's pleadings consist of ten pages numbered two through twelve and are styled answer, counterclaim and cross-complaint under two separate circuit court numbers. Under each separately designated "cause of action" relief is prayed as "set out below" and then there appears as a part of the answer, counterclaim and cross-complaint, a portion designated "preliminary mandatory injunction" which indicates that Miss Satterfield may have originally filed a petition in chancery court in an attempt to restrain or enjoin the repossession of the automobile under replevin and the matter was transferred to the circuit court. In any event, the answer, counterclaim and cross-complaint conclude with a prayer for relief against Rebsamen Ford (designated as "dealer") as follows:

"3. For fraud against dealer, compensatory damages in the amount of $3,660.72; for automobile and $2,000 for emotional distress.

4. For breach of express warranty against dealer compensatory damages in the amount of $3,660.72; for the contract damage for emotional distress in

the amount of $2,000, and punitive damage in the amount of $5,000.

7. . . . for rescission against dealer, the return of the consideration of $511, damages for emotional distress in the amount of $2,000 and punitive damage in the amount of $5,000.

8. For rescission against dealer and return of the consideration in the amount of $511."

Other elements of damage were alleged and prayed for including attorney's fees to be taxed as cost.

This case was tried before a jury which rendered a verdict for Miss Satterfield in the amount of $511 compensatory damage and $3,000 punitive damage. Rebsamen Ford filed a motion for judgment *non obstante veredicto* and the motion was granted. On her appeal to this court Miss Satterfield designated the points on which she relies for reversal as follows:

"The court erred in giving a judgment N.O.V. for the appellee.

The court erred in not giving attorney's fees to appellant's counsel.

Appellee should pay the cost resulting from its designation of additional parts of the record."

We agree with the appellant on the first point so we find it unnecessary to discuss at length the other two points. The statutes of Arkansas make no provision for attorney's fees to be taxed as cost against a losing party in a case of this kind. See *American Physicians Ins.* v. *Hruska,* 244 Ark. 1176, 428 S.W. 2d 622; also *Romer* v. *Leyner,* 224 Ark. 884, 277 S.W. 2d 66. As to appellant's third point, the record is still rather vague when we consider the portions designated by both parties, so we find no merit to appellant's contention under this point.

Returning now to the question of whether the trial court erred in rendering a judgment n.o.v. for the appellee, we are of the opinion that the jury verdict for the compensatory damages in the amount of $511 should stand, but that the punitive damages in the amount of $3,000 should not. The statutory authority for judgment notwithstanding a verdict is found in Ark. Stat. Ann. § 29-111 (Repl. 1962) which is as follows:

"Where, upon the statement in the pleadings, one party is entitled by law to judgment in his favor, judgment shall be so entered by the court, though a verdict has been found against such party."

In *Stanton* v. *Ark. Democrat Co.*, 194 Ark. 135, 106 S. W. 2d 584, we approved the language in *Scharff Distilling Co.* v. *Dennis*, 113 Ark. 221, 168 S. W. 141, where it was stated:

" ' . . . if there could be any warrant for such a judgment, not based solely upon matters appearing in the pleadings or as disclosed by the record proper, the testimony justifying such verdict would have to be undisputed so that the court might declare as a matter of law that the party in whose favor the judgment was entered was entitled to it, notwithstanding the verdict in favor of the other party.' "

In *Stanton* we continued:

"But the testimony in that case [*Scharff* v. *Dennis*] was not undisputed, and for that reason it was held improper to direct a verdict in favor of the party against whom a verdict had been rendered by the jury."

It is now well settled in Arkansas that the test for granting a motion for judgment n.o.v. is the same as the test for granting a motion for a directed verdict, and that a trial court may enter a judgment n.o.v. the same as he may grant a motion for a directed verdict, if there is no substantial evidence to support the verdict. *Baucom* v. *City of North Little Rock*, 249 Ark. 848, 462

S. W. 2d 229; *Edwards* v. *Epperson,* 246 Ark. 194, 437 S. W. 2d 480.

When we measure the evidence in the case at bar by the rules laid down in past decisions, we are of the opinion that the trial court was correct in entering judgment n.o.v. for the appellee as to the punitive damages but erred in entering such judgment as to the compensatory damages. Punitive damages may be imposed when the defendant acts with malice, *Barlow* v. *Lowder,* 35 Ark. 492 (1880), or with willfulness, wantonness, or conscious indifference to consequences from which malice may be inferred. *St. Louis I.M. & S. Ry. Co.* v. *Dysart,* 89 Ark. 261, 116 S. W. 224 (1909); *Choctaw, O. & G. Rd. Co.* v. *Cantwell,* 78 Ark. 331, 95 S.W. 771 (1906).

In the very recent case of *Ray Dodge, Inc.* v. *Moore,* 251 Ark. 1036, 479 S.W. 2d 518, a jury award of punitive damages was approved by this court under a concluding statement as follows:

> "If, then, there was evidence tending to show that appellant intentionally performed a deliberate act with the intention of misleading a prospective purchaser about a material matter to his injury, it was proper to permit the jury to consider the award of exemplary or punitive damages."

In *Ray Dodge* we distinguished that case from the case of *Chicago, R. I. & P. Ry. Co.* v. *Whitten,* 90 Ark. 462, 119 S. W. 835, 21 Ann. Cas. 726, wherein we denied the allowance of exemplary damages saying that before a verdict for exemplary damages is justified, the party to be charged must be guilty of willfulness, wantonness, or conscious indifference to consequences from which malice will be inferred. We also pointed out in *Dodge* that in *Whitten* we said:

> " 'Here the motive of the injuring party becomes material. Mere negligence, indifference, or careless disregard of the rights of others is not sufficient upon which to base a recovery for exemplary damages. The acts must be such as to evince malice. It is true that in law malice is not necessarily personal

hate. It is rather an intent and disposition to do a wrongful act greatly injurious to another.' ''

The facts as evidenced by the record in *Ray Dodge* v. *Moore,* differ from the facts in the case at bar in two important respects. The odometer had definitely been run back in the *Dodge* case after the automobile was traded to Ray Dodge by the original owner and the salesman assured the purchaser that the mileage as shown on the odometer was the correct mileage. The mileage to which the odometer had been changed placed the automobile back within the manufacturer's warranty and Ray Dodge did extensive repairs for which it received pay from the manufacturer under this rejuvenated warranty. In the case at bar it appears from the record that when the purchaser and her father observed the paint on the left fender of the automobile being slightly off-color in comparison with the paint on the rest of the automobile, they inquired of the salesman as to whether the automobile had been wrecked, and the salesman assured them that it had not been. He explained the apparent color difference as due to technique in buffing. There was no contention that Rebsamen Ford or its salesman wrecked the automobile, and there is no proof that they knew it had been wrecked. The purchaser alleged in her complaint that the vehicle had in fact been wrecked while in the possession of the original owner in Conway, Arkansas, and that it cost over $400 to repair the damage. The record reveals no effort to prove this allegation or that the salesman or anyone else connected with Rebsaman Ford even knew about it.

Mr. William B. Lyle, who was a friend of the appellant and her father, Mr. Satterfield, but who was also an automobile mechanic with 30 years experience, observed the off-color fender from a distance and advised Mr. Satterfield that the automobile had been wrecked when Mr. Satterfield complained about the way the automobile steered and performed on the road. Mr. Lyle's opinion on this point was confirmed by raising the hood of the automobile and observing the cementing material where the fender was attached to the body of the automobile.

There is substantial evidence in the record that the automobile "shimmied" when driven at a speed of 40 or 50 miles per hour and that there was a popping noise in connection with steering the automobile. There is substantial evidence that the automobile pulled first one way and then the other on the highway when the brakes were applied. There is substantial evidence that the automobile had been "wrecked" at least to the extent that a front fender had been replaced. There is substantial evidence that salesman Davis assured Miss Satterfield and her father that the automobile had not been wrecked when in fact it had, but there is no evidence that Davis knew the automobile had been wrecked and certainly there was no evidence of malice on the part of Davis and no evidence from which malice on his part could be implied in making the statement he did in answer to the purchaser's inquiry.

We conclude, therefore, that there was no substantial evidence on which the case should have been presented to the jury on the element of exemplary or punitive damages, so we hold that the trial court did not err in granting a judgment n.o.v. in favor of the appellee as to the punitive damages.

We are of the opinion, however, that the trial court did err in granting judgment for the appellee n.o.v. as to the compensatory damages. It is difficult to determine from the record before us the exact theory on which this case was tried. The record indicates that the automobile was delivered to Rebsamen Ford under its possessory action in replevin. The record also indicates that the appellant-purchaser voluntarily delivered and surrendered the possession of the vehicle to the appellee with the idea of canceling her contract when she was unable to get the automobile approved on safety inspection. It would appear that the jury verdict for $511 in compensatory damages was based on the value allowed the appellant on the automobile she traded to the appellee, and was in response to the appellant's 8th prayer for relief in her pleadings, *supra*. Be that as it may, there was sufficient evidence to go to the jury on the question of compensatory damages, and there was substantial evidence upon which the jury could have based its verdict for

$511. Mr. Charles Brush, Jr. qualified as an expert in the field of repairing and selling late model automobiles. He testified that an automobile of the make and model of the one involved in this case has a value on the used car market of approximately $2,895. He testified that the same automobile in the condition complained of by the appellant has a market value of approximately $2,000.

The appellant did not abstract the testimony of Mr. Gene Beavers, the business manager for Rebsamen Ford, nor did she mention the fact that Mr. Beavers testified. Mr. Beavers testified that he personally inspected the automobile when it was brought in by the appellant on July 7, and the automobile was muddy and showed evidence of abuse. Among the other things Mr. Beavers found wrong with the automobile, he found that the front wheels were sitting out at the bottom which in his opinion was caused by hitting curbs "and things of this nature." It must be remembered that Miss Satterfield only purchased this automobile on May 14 and had driven it to and from work between Little Rock and North Little Rock for a period of less than two months when she returned it to Rebsamen Ford and it was inspected by Mr. Beavers on July 7.

We are of the opinion, therefore, that the jury could have concluded from all the evidence that the difficulty encountered with the front wheels was directly related to the front wheels "sitting out at the bottom" and that the reason for them "sitting out at the bottom" was more likely caused by the wreck requiring a new fender than by "hitting curbs and things of this nature," and that because of the misrepresentations made by salesman Davis, the appellant suffered damage in at least the value of the automobile she traded to Rebsamen Ford in the transaction.

The judgment of the trial court as to actual or compensatory damages is reversed and this cause remanded with instructions to enter judgment for the plaintiff for $511 and costs.

Reversed and remanded.