L. C. WILLIAMS d/b/a WESTSIDE MOTORS
*v.* George CURTIS

73-242                                    506 S.W. 2d 563

Opinion delivered March 18, 1974

*Davis, Plegge & Lowe,* for appellant.

*Dodds, Kidd, Hendricks & Ryan,* for appellee.

J. FRED JONES, Justice. On October 4, 1971, the appellee George Curtis was struck by an automobile and injured as he was crossing a street in North Little Rock. The automobile belonged to L. C. Williams, d/b/a Westside Motors, and was being driven at the time by Gerald Hall, a full-time employee of Dalton L. Sims, d/b/a Sims Upholstering. Curtis filed a damage suit for personal injuries against Williams, Hall and Sims and obtained a joint and several judgment against all three on a jury verdict for $10,000.

At the close of the plaintiff's case, Williams moved for a directed verdict as to him and the motion was denied by the trial court. Williams renewed his motion after he also testified as a witness called by the plaintiff-appellee. He did not renew his motion for a directed verdict at the close of all the testimony but he did move for judgment notwithstanding the verdict. The motions were denied by the trial court and judgment was entered as already stated. On appeal to this court Williams states the points he relies on as follows:

"1. The trial court erred in failing to direct a verdict for the appellant at the conclusion of the plaintiff's testimony.

2. The trial court abused its discretion when it allowed appellee to present further testimony from appellant purporting to establish agency between Sims' driver and appellant.

3. The trial court erred in failing to direct a judgment notwithstanding the verdict.

4. The trial court erred in failing to admonish the jury to disregard the improper references to insurance when the court specifically advised appellant's counsel that he would do so when denying a motion for mistrial."

On the date here involved, the appellant Williams operated a used car lot where he was engaged in the business of selling used automobiles. Sims operated an upholstery shop some distance from Williams' car lot where he was

engaged in the business of installing and repairing automobile upholstery. Hall was employed full time by Sims and was assigned the duty of picking up automobiles from Sims' customers and returning them to the customers after Sims had finished with the upholstery work involved. Williams was one of Sims' customers and on October 4, 1971, Sims had done some upholstery work on an automobile belonging to Williams and while Hall was in the process of driving the automobile back to Williams' car lot, the automobile struck and injured the appellee Curtis.

Johnny Foster, a police officer who investigated the accident, was first called as a witness by the plaintiff-appellee Curtis. He testified as to his investigation of the accident but his testimony contributed nothing to the points here involved. Mr. Curtis next testified in his own behalf but he only gave his version of how the accident occurred and described his injuries. Mr. Roy Spann was next called as a witness by the appellee-plaintiff. He said he was driving his automobile immediately behind the automobile that struck Mr. Curtis and that he saw the automobile strike Curtis. He then testified as to his version of what occurred. The deposition of Dr. Thomas Rooney was next read into evidence, having to do only with the nature and extent of Mr. Curtis' injuries.

The defendant Hall was then called as a witness by the plaintiff-appellee Curtis. He testified that he was employed by Sims Upholstering in the capacity of delivering cars. He said that on the day in question he was driving an automobile owned by Westside Motors and was on his way to deliver the automobile back to Westside Motors when the automobile struck Mr. Curtis. He testified that he had previously picked up automobiles and returned them to Mr. Williams' car lot. He said Mr. Williams would merely point out the automobile to be worked on by Sims and he would drive it to Sims' shop and then return it. He said Mr. Williams did not give him any directions at all regarding the speed or routes over which he was to drive the automobile. He said that if Mr. Williams had given him such directions, he would have attempted to carry them out because he knew the automobiles belonged to Williams.

On cross-examination Mr. Hall testified that he had

been working for Sims Upholstery for about four or five months and restated that on previous occasions he had picked up and delivered automobiles to Westside Motors for Mr. Sims. He said that Mr. Williams had never given him any instructions in regard to driving the automobiles. He said that he would have to see Mr. Williams to find out which automobile he was to pick up and deliver to Sims Upholstery. He said that on some occasions Sims Upholstery would have one of Williams' automobiles working on it and that when he would deliver that automobile back to Williams, he would pick up another one. He said he was on his way returning the automobile from Sims Upholstery shop to Williams' used car lot when the accident occurred, and that one of the other upholstery shop employees was to have picked him up at Williams' lot and returned him to his place of employment after the automobile was delivered to Williams' lot. He said that after he was involved in the accident with Mr. Williams' automobile, he did not report the accident to Mr. Williams because he did not see him. He said he had never reported the accident to Mr. Williams and up until the date of trial, he had never had occasion to discuss the accident with him. He testified on cross-examination that he was driving west on Washington Avenue and had stopped at an intersection traffic light. He said when the light changed, he started forward and Mr. Curtis jumped out in front of him and he could not avoid striking him. The remainder of Mr. Hall's testimony had to do with the occurrences at the scene of the accident and the manner in which it happened.

At the conclusion of Mr. Hall's testimony, Mr. Curtis rested his case, whereupon the trial judge and the attorneys retired to chambers where, out of the presence of the jury, Williams presented his motion for a directed verdict and the motion was denied as set out in the record as follows:

"MR. CEARLEY: Defendant L. C. Williams, d/b/a West Side Motors moves for a directed verdict as to him on the ground that no genuine issue of fact has been presented which would establish that Gerald Hall was an agent, servant or employee of L. C. Williams, d/b/a West Side Motors at the time the accident occurred.

THE COURT: For the present time I will deny the mo-

tion with some degree of uncertainty and reluctance. Bob has been assured that if the question does not become moot he has the right to file any type motion that he desires to file and it will be given very serious consideration. Now, in the light of my observations and ruling, counsel for plaintiff requested the right to offer additional proof even though prior to the hearing in Chambers counsel for plaintiff had indicated that plaintiff's case was closed.

MR. CEARLEY: To this action all counsel for the defendants specifically object. Counsel for defendant L. C. Williams, d/b/a West Side Motors further objects to the Court overruling its motion for directed verdict on the ground that the only testimony before the Court as to the issue of agency is not properly admissible for that purpose."

The attorney for the plaintiff-appellee Mr. Curtis then submitted medical bills and period of life expectancy previously agreed to by stipulation and then stated: "At this time we call Mr. Williams to the stand."

Under direct examination by Mr. Curtis' counsel, the appellant Williams testified that he together with his wife were owners of Westside Motors. He testified that from time to time he had the upholstery in his automobiles repaired by Sims Upholstery shop and that Sims came, or sent an employee, to his lot to pick up the automobiles. He said that his agreement with Sims was that Sims was to come and get the cars. He said the automobiles in which he had the upholstery repaired by Sims were used automobiles he kept on his lot for resale, and that his purpose in having the upholstery replaced or repaired was to put the automobiles in better salable condition. He said he had been using Sims Upholstery service for approximately 18 months and had been doing business with Sims for some time. He said he had seen Mr. Hall previously but did not know him personally. He said he assumed that Hall was employed by Sims Upholstery because he had come to his lot with Sims when he came for an automobile. He said that he was aware that Hall was driving one of his automobiles when the accident occurred, and that he assumed he was an employee of Sims. He

said that he did not feel he had the right to give instructions to Mr. Sims' employee. He said that he felt that he would have a right to instruct Mr. Sims what he wanted done with his automobiles, and that if he knew his automobiles were being driven in a manner that was not satisfactory to him, he felt he would have a right to change the people that were doing work on his automobiles.

Mr. Williams was examined at some length as to what rights he felt he would have in directing Mr. Hall in the operation of an automobile he was delivering to or from the Sims Upholstery shop, and the substance of his answers was that he assumed that a man he was doing business with, such as Mr. Sims, would handle a customer's automobile with care and in a satisfactory manner and that if he felt otherwise, he would take his business elsewhere. He said he did not feel he had the right to give another man's employee orders on how to do something.

Following Mr. Williams' testimony, the plaintiff-appellee again rested, whereupon outside the hearing of the jury Williams renewed his motion for a directed verdict appearing in the record as follows:

"MR. CEARLEY: The defendant Williams, d/b/a West Side Motors moves again for a directed verdict as to him on the ground that no geniune issue has been presented as to an agency relationship existing between defendant Williams and defendant Hall and that the only testimony in support of the existence of any such relationship was not properly admissible for that purpose."

Mr. Sims was next called by his own attorney and testified that he is the owner of the Sims Upholstery shop and had been doing upholstery work for Westside Motors for approximately 18 months. He said that as a courtesy to his customers, and as a business policy, it was his custom to pick up the automobiles he was doing work on and to return them to the owner. He said that when he finishes an upholstery job on an automobile, he delivers the automobile to the owner if it is not picked up by the owner.

On cross-examination by the appellee Curtis' attorney Mr. Sims testified that when Mr. Williams would call him to do upholstery work on an automobile, he would go to Williams' car lot and pick up the automobile and then would return it after he had completed work on it. He said that his employee Mr. Hall picked up automobiles and delivered them back to Mr. Williams' lot and he considered that Mr. Hall was to do whatever Mr. Williams told him to do with the automobile.

Under cross-examination by Mr. Williams' attorney, Mr. Sims said that sometimes when Mr. Williams would call him about an upholstery job on an automobile, he would go look at the automobile before he would send a driver for it. He said on many occasions he never did go to the Williams automobile lot at all. He said that on some occasions when he had completed the work on one of Williams' automobiles, he would send it back to Williams' lot and pick up another one to work on. He said on other occasions he would have another employee follow the driver of the Williams car in order to bring the driver back after the repaired automobile was delivered. He said that if Mr. Williams had directed him to operate an automobile in a certain manner, he supposes he would have complied and would have instructed his employees to do so. He said that when the accident happened in this case, Hall was on his payroll and had been for two or three months. He said that Hall should have known how to drive an automobile according to law, and that he was doing so when the accident occurred. He said he recognized that the automobile Hall was driving belonged to Mr. Williams and in one sense Mr. Williams would have had more right that he had to give instructions on how to handle the automobile, because the automobile belonged to Williams.

Mr. Sims was again cross-examined by the plaintiff-appellee's attorney, after which the plaintiff-appellee again rested and so did Sims and Hall. At this point in the proceedings the attorney for Williams stated: "We have no testimony, Your Honor."

Officer Foster was again called by the attorney for Mr. Curtis and was examined and cross-examined by the attorneys for Curtis, Hall and Sims pertaining to matters not

pertinent to this opinion. Mr. Spann was also re-examined by the attorney for Mr. Curtis and cross-examined by the attorney for Sims and Hall, and on cross-examination he mentioned that Sims had requested him not to testify because he had no insurance. Whereupon the attorney for Williams objected to the issue of insurance being brought into the matter and moved for a mistrial. The motion for mistrial was overruled and Williams' attorney then asked that the jury be admonished to strike any remarks pertaining to insurance and the trial court did so.

Following the jury verdict, as above set out, Williams filed a motion for judgment non obstante veredicto as follows:

"Comes the defendant, L. C. Williams d/b/a West Side Motors, having previously moved the court to direct a verdict in his favor at the close of the testimony at the trial hereof, which motion was denied, and thereafter the jury having returned a verdict in favor of the plaintiff against the defendant, L. C. Williams d/b/a West Side Motors, among others, and moves the court to enter judgment in his favor notwithstanding the verdict on the ground that the defendant's motion for directed verdict should have been granted as there is no substantial evidence creating a question of fact for the jury regarding defendant L. C. Williams d/b/a West Side Motors.

In the event this defendant's motion for judgment *Non Obstante Veredicto* is denied, defendant hereby reserves the right to move for a new trial."

In the case of *Smith* v. *McEachin,* 186 Ark. 1132, 57 S.W. 2d 1043, we stated the rule pertaining to directing verdicts in language as follows:

"It is a rule of universal application that, where the testimony is undisputed and from it all reasonable minds must draw the same conclusion of fact, it is the duty of the court to declare as a matter of law the conclusion to be reached; but, where there is any substantial evidence to support the verdict, the question must be submitted to the jury. In testing whether or not there is any substantial evidence in a given case, the evidence

and all reasonable inferences deducible therefrom should be viewed in the light most favorable to the party against whom the verdict is directed, and, if there is any conflict in the evidence, or where the evidence is not in dispute but is in such a state that fair-minded men might draw different conclusions therefrom, it is error to direct a verdict."

See also *Members Mutual Ins. Co.* v. *Blissett*, 254 Ark. 211, 492 S.W. 2d 429.

The primary question in the case at bar is whether the issue of agency should have been submitted to the jury as a question of fact or decided by the court as a matter of law. The same question was presented in the case of *Campbell* v. *Bastian*, 236 Ark. 205, 365 S.W. 2d 249, and in that case we said:

". . . Campbell claims that the question of agency should have been submitted to the jury rather than declared as a *matter of law*. It is true that, ordinarily, agency is a question of fact to be determined by the jury; but agency becomes a question of law for the court when the material facts concerning it are not disputed and only one reasonable conclusion can be drawn therefrom. 3 C.J.S. p. 325, 'Agency' § 330. As the Court of Appeals of Kentucky said in *Wolford* v. *Scott*, 257 S.W. 2d 594:

'Where the facts are in dispute and the evidence is con-tradictory or conflicting the question of agency, like other questions of fact, is to be determined by a jury. However, where the facts are undisputed, the question becomes one of law for the court. *Horne* v. *Hall* (Ky.), 246 S.W. 2d 441.'"

It is clear from the evidence in the record before us, that Hall was at all times an employee and agent of Sims and was at no time, pertinent to this case, an employee, servant or agent of Williams. The facts as made clear from the evidence in the record, place this case squarely within the purview of *Home Ins. Co.* v. *Williams*, 254 Ark. 396, 494 S.W. 2d 110. Our decision in *Williams*, and in the other cases therein cited, is controlling here. In *Williams* an automobile owner had left

her automobile with her garageman with instructions to mount some new tires and to deliver the automobile to her place of employment. A garage employee was returning the automobile to the owner when the plaintiff was struck and injured. In affirming a directed verdict in favor of the owner, we quoted with approval from 35 ALR 2d 804 as follows:

"'In the great majority of cases involving negligent operation of a car by service personnel in connection with the work for which it has been placed in their custody, the courts have held that the owner is not liable.

This result is generally reached on the theory that the service establishment becomes the bailee of the car as an independent contractor, since the owner is concerned only with the results of the work and not with the detailed manner in which it is carried out.'"

It is rather difficult to determine from the record in the case at bar whether Williams renewed his motion for a directed verdict at the close of all the evidence, because it is difficult to determine when all the evidence closed. It is true that in *Granite Mt. Rest Home* v. *Schwartz, Adm'r*, 236 Ark. 46, 364 S.W. 2d 306, we said:

"A motion for directed verdict was made by appellant at the conclusion of plaintiff's (appellee's) testimony, and was denied by the court. Whether this action by the trial court was correct is of no moment, for upon the motion being overruled, appellant proceeded to offer its evidence. We have held that when one proceeds, after the denial of such a motion, to introduce proof, he waives the error of the court in failing to grant same. *Grooms* v. *Neff Harness Co.*, 79 Ark. 401, 96 S.W. 135, Ft. *Smith Cotton Oil Co.* v. *Swift and Co.*, 197 Ark. 594, 124 S.W. 2d 1. * * * As stated in Wigmore on Evidence, Volume 9, Third Edition, one 'cannot take advantage of the judge's original *erroneous refusal* to direct a verdict for insufficiency at the time of the first motion if he does *not renew* the motion at the close of all the evidence.' The reasoning employed, is, of course, apparent, for if one has waived his original motion, and does not renew

same, there is nothing to be passed upon by the court at the conclusion of the evidence. No error could have been committed by the court at this point—for nothing was presented."

In the case at bar the only evidence offered by Williams after his motion for a directed verdict was denied, consisted of Williams' own testimony when he was called as a witness by the plaintiff-appellee. We see no point in belaboring the question of whether Williams renewed his motion for a directed verdict at the close of all the evidence, for we are of the opinion that the trial court should have granted Williams' motion for a judgment n.o.v. and the same rules apply.

In the case of *Satterfield* v. *Rebsamen Ford, Inc.*, 253 Ark. 181, 485 S.W. 2d 192, we set out the test for granting a motion for judgment n.o.v. and in that case we said:

"The statutory authority for judgment notwithstanding a verdict is found in Ark. Stat. Ann. § 29-211 (Repl. 1962) which is as follows:
'Where, upon the statement in the pleadings, one party is entitled by law to judgment in his favor, judgment shall be so entered by the court, though a verdict had been found against such party.'
* * *

It is now well settled in Arkansas that the test for granting a motion for judgment n.o.v. is the same as the test for granting a motion for a directed verdict, and that a trial court may enter a judgment n.o.v. the same as he may grant a motion for direct verdict, if there is no substantial evidence to support the verdict. *Baucom* v. *City of North Little Rock*, 249 Ark. 848, 462 S.W. 2d 229; *Edwards* v. *Epperson*, 246 Ark. 194, 437 S.W. 2d 480."

Since we agree with the appellant that there was no substantial evidence to support the verdict of the jury, and that the trial court should have granted Williams' motion for a judgment notwithstanding the verdict of the jury, we shall not discuss the other points designated by Williams.

The judgment is reversed and dismissed.

BYRD, J., disqualified.