**Verla Loraine TACKETT, Appellant, Cross-Appellee,**

v.

**Pearl KIDDER, Appellee, Cross-Appellant.**

**Nos. 79–1459, 79–1535.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 14, 1980.

Decided March 11, 1980.

Rehearing and Rehearing En Banc Denied April 1, 1980.

Charles Hanks, Fayetteville, Ark., for appellant; Wyman R. Wade, Jr., Fayetteville, Ark., on brief.

Mark Lindsay, Wommack, Lindsay & Associates, Fayetteville, Ark., for appellee.

Before STEPHENSON and McMILLIAN, Circuit Judges, and THOMAS *, Senior District Judge.

DANIEL HOLCOMBE THOMAS, Senior District Judge.

These cases are appealed from a granting of the appellee's motion for judgment not-

withstanding the verdict in an action based on alleged fraud in the exchange of quitclaim deeds. We affirm the judgment of the District Court.[1]

The appellant, Verla Loraine Tackett, and appellee, Pearl Kidder, are two widows who were good friends and owners of adjoining lands in Washington County, Arkansas. The legal descriptions of their respective deeds showed an overlap, with the deed of each including a portion of the other's property. The parties exchanged quitclaim deeds intending to eliminate the overlap. The purpose of such action was to assure that both titles would be marketable.

Mrs. Tackett and her now deceased husband bought the Tackett property in 1945 from Jacob Coleman, who had owned the property since 1918. Mrs. Kidder and her husband owned an adjoining farm, which they had purchased in 1941 from a Mr. Poole.

The Tacketts never claimed to own any of the property north of the "old fence", even though the description of the property north of the fence was included on the Tackett's deed from Jacob Coleman.[2] The Kidders never claimed to own any of the property south of Owl Creek even though the description of the property south of the Creek was included in the Kidder deed from Mr. Poole. The Tackett house sat on property included in the description of the Kidder deed. The property which is in dispute herein is the property between Owl Creek and the "old fence" which will hereinafter be referred to as the "Tackett fence." Both parties claim to have owned said disputed property.

Mrs. Kidder alleges that a fence was immediately adjacent to Owl Creek, which followed the north bank of the Creek. Mrs. Tackett claims there was never any fence on the immediate north bank of Owl Creek. Mrs. Tackett considered the "Tackett

* The Honorable Daniel H. Thomas, Senior United States District Judge, Southern District of Alabama, sitting by designation.

1. The Honorable Paul X Williams, Chief Judge, United States District Court, Western District of Arkansas.

2. Trial Court's Mem. Opinion Exhibit "A".

fence" to be the boundary line, while Mrs. Kidder believed the alleged fence on the north bank of Owl Creek to be the same.

Subsequent to her husband's death, Mrs. Tackett sought to sell her property and move to Oklahoma. A prospective purchaser indicated his desire to consummate such a sale providing the overlap in deeds, which created a cloud upon the title, was removed. Mrs. Kidder informed Mrs. Tackett concerning the overlap of legal descriptions in their respective deeds and the necessity of removing such impropriety before any sale could take place. Mrs. Kidder also told Mrs. Tackett that the Tackett home was on property designated in the Kidder deed.

Months after the quitclaim exchange took place, Mrs. Tackett discovered that the "Tackett fence" had been torn down and that the property between Owl Creek and the "Tackett fence" was being held under claim of ownership by other persons.[3]

Mrs. Tackett, plaintiff in the trial court below, instituted this action for compensatory and punitive damages alleging that Mrs. Kidder fraudulently procured and induced Mrs. Tackett to execute and deliver to Mrs. Kidder the quitclaim deed. Mrs. Tackett further alleged that Mrs. Kidder falsely represented that a portion of the property quitclaimed to Mrs. Kidder would be quitclaimed back to Mrs. Tackett in the exchange. Mrs. Tackett submitted that because of her trust and confidence in Mrs. Kidder, she relied to her detriment on the latter's representations which were allegedly made maliciously and with knowledge of their falsity.

Mrs. Tackett sued for compensatory damages of Five Thousand Dollars ($5,000.00) for the value of the land and for Twenty Thousand Dollars ($20,000.00) punitive damages.

The jury returned a verdict for Mrs. Tackett for Fifteen Thousand Dollars ($15,-000.00) on April 5, 1979. On April 10, 1979, Mrs. Kidder filed a Motion for Judgment N.O.V. or, in the alternative, for a new trial. The trial judge granted Mrs. Kidder's Motion for Judgment N.O.V. and filed a Memorandum Opinion of the Court on May 2, 1979. In his opinion the trial judge entered a judgment notwithstanding the verdict in favor of Mrs. Kidder and dismissed Mrs. Tackett's complaint with prejudice.

### I. Appellee's Motion for Judgment Notwithstanding the Verdict.

Appellant contends that viewing the evidence most favorably to her and giving her the benefit of all reasonable inferences, the trial court erred in granting appellee's motion for judgment n. o. v., instead of ruling that the evidence was sufficient as a matter of law to support the jury's verdict for appellant. Despite our deference to the findings of the jury, we align ourselves with the position of the trial judge.

■ The motion for judgment notwithstanding the verdict tests the sufficiency of the evidence in just the same way as does the motion for directed verdict at the close of all evidence. *Shaw v. Edward Hines Lumber Co.*, 7 Cir., 249 F.2d 434. In a doubtful case the court may prefer to deny the motion for a directed verdict, and consider the attack on the sufficiency of the evidence subsequently on motion for judgment n. o. v.

> If a verdict is directed and the appellate court holds that the evidence was in fact sufficient to go to the jury, an entire new trial must be had. If, on the other hand, the trial court submits the case to the jury, though it thinks the evidence insufficient, final determination of the case is greatly expedited. If the jury agrees with the Court's appraisal of the evidence, and returns a verdict for the party who moved for a directed verdict, the case is at an end. If the jury brings in a different verdict the trial court can grant judgment notwithstanding the verdict. Then if the appellate court holds that the trial court was in error in its appraisal of the evidence, it can reverse and order judgment on the verdict of the jury, without any need for a new trial.

**3.** Tr. 125.

Wright and Miller, Federal Practice and Procedure, § 2533, Pg. 586.

■ " * * * a motion for [a] directed verdict or [a] judgment notwithstanding the verdict should be granted if there is no substantial, *i. e.*, not more than a mere scintilla of evidence to sustain the verdict." *U. S. v. Strebler*, 313 F.2d 402 (8th Cir. 1963) (See Footnote 1, page 403). "The scintilla-evidence rule is not applied in federal courts." *Mann v. Bowman Transportation, Inc.*, 300 F.2d 505 (4th Cir. 1962).

The problem, however, lies not with merely stating the rules, but with applying them to a particular set of facts.

■ Were the scintilla rule to be followed in cases such as this, we might easier find error by the trial court in its granting of the motion n. o. v. However, as heretofore stated, the standard is that of substantial evidence to support a verdict. Our careful reading of the transcript reveals no such evidence. The complaint is bottomed on misrepresentation "with knowledge of their falsity and with malice and intent to injure." The testimony reveals at most an unfortunate misunderstanding.

We are unable to find substantial evidence of fraud from the testimony.

Granted, a judgment n. o. v. may at times seem harsh, however, we agree with the trial judge whose presence at the trial afforded him a much better vantage point from which to evaluate the evidence not from a transcript alone, but from seeing and observing the witnesses themselves.

## II. Subject Matter Jurisdiction.

Although our finding supporting the judgment n. o. v. for all practical purposes removes the need for appellee's assertion of failure to satisfy the requisite amount in controversy requirement, we feel it beneficial to summarily speak to that issue.

■ Appellee asserted that the maximum amount involved was only $4,050.00 and therefore did not meet the requisite diversity amount. We disagree. Arkansas law permits punitive damages for fraud. *Satterfield v. Robsamen Ford, Inc.*, 253 Ark. 181, 485 S.W.2d 192.

■ Appellant's original complaint sought $5,000.00 compensatory damages and $20,000.00 punitive damages. It is stated in *Wright, Law of Federal Courts*, 3rd ed. pp. 128, 129:

> The court may believe it highly unlikely that plaintiff will recover the amount demanded, but this is not enough to defeat jurisdiction, unless it appears to a legal certainty that plaintiff cannot recover the amount which he has demanded. Thus suppose that plaintiff demands actual damages of $5,000.00 and punitive damages of $20,000.00. If under the applicable rule of law, punitive damages are not recoverable, it can be said that there is a legal certainty that plaintiff will not recover the amount demanded and the action will be dismissed. If the relevant state law permits punitive damages on the facts alleged, the requisite amount is in controversy, even though it may be unlikely that the amount demanded will be had.

## III. Appellant's Proposed Jury Instructions.

Appellant contended that the trial court committed error in failing to give her proposed jury instruction number three, to wit: that appellee was liable for the misrepresentations of her agents when committed in the course and scope of their employment.

Suffice it to say that the trial judge's determination that such representations were not in fact made renders this issue moot at this juncture.

## IV. Appellee's Motion for Judgment N.O.V. or a New Trial.

■ Appellee requested that should the trial court's order for judgment n. o. v. be reversed on appeal, that she be granted a new trial by the trial court. The trial judge took the position that by granting appellee's motion for judgment n. o. v., her alternative motion for a new trial was thereby rendered moot in the trial court. Despite the obvious unimportance of this issue current-

ly, we cite the case of *Mays v. Pioneer Lumber Corp.*, 502 F.2d 106, 110 (4th Cir. 1974); 5A MOORE'S FEDERAL PRACTICE ¶ 50.14.

In *Mays, supra,* the trial judge granted a judgment n. o. v. but failed to comply with Fed.R.Civ.P. 50(c) and did not rule on the motion in the alternative for a new trial. The Fourth Circuit reversed the judgment n. o. v. and ruled on the motion for a new trial, denying said motion. In doing so, the court noted that since the Court of Appeals may reverse the grant of a new trial and order entry of judgment on the verdict, it would seem absurd to hold that this remedy is circumscribed by the trial court's failure to comply with the mandate of Fed.R.Civ.P. 50(c) to rule on the motion for a new trial.

AFFIRMED.