Lewis J. NOBLES, Jr., and Geraldine B. NOBLES,
His Wife; and George F. BURCHARD and Ida Jo
BURCHARD, His Wife *v.* STROUT REALTY, INC.

CA 82-205                                    646 S.W.2d 24

Court of Appeals of Arkansas
Opinion delivered February 16, 1983

*Pilkinton & Pilkinton,* by: *James H. Pilkinton, Jr.,* for appellants.

*Graves & Graves,* by: *John Robert Graves,* for appellee.

DONALD J. CORBIN, Judge. Appellants, Lewis J. Nobles and Geraldine B. Nobles, his wife, and George F. Burchard and wife, Ida Jo Burchard, appeal from an action of the Hempstead County Circuit Court in granting appellee's motion for directed verdict. The Court rendered judgment for appellee, Strout Realty, Inc., in the sum of $34,047.00 plus costs and interest. We reverse and remand.

Appellants owned several tracts of land in Hempstead County, Arkansas, among which were a 1,261 acre tract and a 350 acre tract. Appellants gave a number of open non-exclusive real estate listings on their tracts to real estate brokers in southwest Arkansas.

On March 23, 1978, Roy Taylor of Stretch Realty showed Boyd Morrow of Louisiana the 1,261 acre tract and the 350 acre tract. Taylor advised Morrow that Stretch Realty had 1,611 acres for sale at $600.00 per acre. The showing consisted of telling Morrow of the listed land and driving the road on the boundary of the property. Morrow advised Taylor that he was not interested in purchasing that much land. Taylor sent a notice of showing to appellant George

Burchard, advising him that he had shown the 1,611 acres at $600 per acre to Boyd Morrow.

In the spring of 1978, Boyd Morrow contacted appellee seeking to purchase soybean land. On July 10, 1978, while appellants were listing another tract of their land with appellee Strout Realty, Inc., appellee obtained an open listing on the 1,261 acre tract and the 350 acre tract at the price of $600.00 per acre. On July 13, 1978, appellants amended the open listing price with appellee to $450.00 per acre. On July 14, 1978, appellee through one of its agents wrote Morrow and advised him that appellee had some new land listed which Morrow might be interested in. Two weeks later appellee's agent, John Samuels, drove over the 1,611 acres with Morrow and appellant Burchard.

Boyd Morrow testified that he told Strout Realty, Inc., he was interested in the property but that he and his brother only had a small amount of money to put up as earnest money and would have to rely on Farmer's Home Administration for financing. He further testified that Horace Samuels, an agent of appellee, informed him that FHA should only handle financing for residents of the state. He testified that he later contacted appellant, George Burchard, and Burchard advised him that any offers would have to come through a realtor. Roy Taylor of Stretch Realty learned from appellant Burchard that they were in a hurry to sell and had reduced the purchase price to $450.00 per acre and would sell in separate tracts. Taylor contacted Morrow to advise him of the changes in the listing which he had shown him in March and obtained an offer which appellants accepted. The loans were ultimately funded and the sales were closed on or about May 11, 1979, some fourteen months after Taylor first exposed Morrow to the property and some nine and one-half months after Taylor began serious negotiations with the Morrow brothers under the open listing. Appellants paid Stretch Realty a five percent commission of $28,372.50.

The record reflects that the only contact appellee had with the Morrows was the showing of the property in July

and a letter referring to the possibility of arranging a smaller earnest money deposit but still insisting on a quick closing.

Appellee moved for a directed verdict on the basis that appellant Burchard admitted on the stand that the Morrow brothers were prospects of the Samuels of Strout Realty, Inc. In granting this motion, the trial judge agreed and stated that appellant Burchard was bound by his testimony and his admission acknowledging that the Morrows were procured by the Samuels of Strout Realty, Inc.

The following testimony by appellant Burchard was apparently the basis of the judge's ruling on the motion for a directed verdict:

Q. Do you know when you next saw the Morrow brothers?
A. I don't recall the date, but it was the day after they called me.
Q. They did come up there?
A. They did come back.
Q. All right, what was the purpose of the visit?
A. They were wanting to see if they could work out some kind of deal to buy the place.
Q. Did they tell you why?
A. Yes, sir.
Q. Why?

Mr. Graves: Object
The Court: Sustained.

Q. All right, Did you work a deal out with them?
A. No, sir.
Q. What did you tell them?
A. I told them that there was no way that I could put the deal together, that I had it listed with three or four realtors on an open listing, and I knew that I could not sell the land, because it had been showed by another realtor. But my advice to them, and our conversation was short, 'You will have to see one of the realtors that has it listed, and they will put the deal together for you.'

In *Westside Motors* v. *Curtis*, 256 Ark. 237, 506 S.W.2d 563 (1974), the Supreme Court quoted the rule pertaining to directed verdicts from an earlier decision as follows:

> It is a rule of universal application that, where the testimony is undisputed and from it all reasonable minds must draw the same conclusion of fact, it is the duty of the court to declare as a matter of law the conclusion to be reached; but, where there is any substantial evidence to support the verdict, the question must be submitted to the jury. In testing whether or not there is any substantial evidence in a given case, the evidence and all reasonable inferences deducible therefrom should be viewed in the light most favorable to the party against whom the verdict is directed, and, if there is any conflict in the evidence, or where the evidence is not in dispute but is in such a state that fair-minded men might draw different conclusions therefrom, it is error to direct a verdict.

In *Thompson* v. *Harper*, 225 Ark. 47, 279 S.W.2d 277 (1955), the Arkansas Supreme Court stated:

> In 8 Am. Jur. 1069, in discussing the effect of abandonment on the part of the broker, the holdings are summarized in this language:
>
>> If a broker, after introducing a prospective customer to his employer to no purpose, abandons his employment entirely, or if, after procuring a person who proves to be unwilling to accept the terms of his principal, he merely ceases to make further endeavors to negotiate a deal with that particular individual and all negotiations in that direction are completely broken off and terminated, he will not be entitled to a commission if his employer subsequently renews negotiations with the same person, either directly or through the medium of another agent, and thus effects a sale without further effort on the part of the broker first employed.

In an Annotation in 9 Ann. Cas. 435 many cases are cited to sustain this statement:

> If a broker does not procure a purchaser on the terms authorized and he abandons further efforts to sell to a prospective purchaser, or if negotiations between the broker and the purchaser are completely broken off and terminated, the broker will not be entitled to a commission if the owner subsequently enters into negotiations with the same party and effects a sale.

We believe questions of fact existed for the jury to determine who the procuring broker was and whether or not the actions of appellee constituted an abandonment of the Morrows as prospects and thereby released the owners to negotiate with the Morrows either directly or through another agent. Since appellee's agent, John Samuels, admitted on the stand that Boyd Morrow advised him that he had looked at part of the land before, a question of fact existed as to which broker procured the sale.

As stated in *Murray* v. *Miller*, 112 Ark. 227, 166 S.W. 536 (1914):

> Of course, if, during the life of appellant's contract, Miller, the owner, had made a sale of the property directly to a prospective purchaser with whom appellant had been negotiating, and whose effort had brought about the direct negotiations with the owner which resulted in the sale, then he would be entitled to a commission. But even if the sale had been made under those circumstances by the owner through another agent who had an equal right with appellant to negotiate a sale, and whose effort contributed equally in bringing about the sale, then the agent who finally secured the purchaser, and not appellant, was entitled to the commission, and the owner is not liable to appellant if he acted in good faith and did not interfere with appellant's efforts to consummate the sale.

In the case at bar, the agents of appellee admitted that they never obtained an offer from the Morrows. In *Brinkman*

v. *Peel*, 222 Ark. 345, 260 S.W.2d 448 (1953), the Supreme Court noted:

> The law is that as between realtors who have non-exclusive listings, the agent first producing a buyer whose offer meets the seller's terms has earned his commission.

We believe the trial court erred in taking the case away from the jury as it clearly deprived appellants of the right to have questions of fact which raised a jury question presented to the jury. Reversed and remanded.